**Appeal of L. Z. DICKEY GROCERY COMPANY.**                    Docket No. 156.

In ascertaining the reasonable amount of a deduction for exhaustion, wear and tear of property used in business, the character of the properties, their location, surroundings and uses, must be given consideration and their probable life will be determined in accordance with the conditions of each individual case. The testimony in this case held sufficient to support an estimated probable life of a building at 20 years and of office equipment at 5 years.

A private roadway, leading from a public highway to a taxpayer's place of business and necessary in order that both the taxpayer and the public may have access to and exit from the taxpayer's store and warehouse, is a part of the operating plant of the business and its cost is a capital expenditure.

Where a taxpayer borrows funds from a person who is, or expects to become, a stockholder in the taxpayer corporation, and who first receives a promissory note for the amount of the loan but with the understanding that at some future time the note is to be exchanged for preferred stock and such exchange actually takes place, only the amount of interest accruing upon the note while it is outstanding can be claimed as a deduction from gross income. Other amounts, paid to the same person and for times during which the preferred stock is outstanding, are dividends.

Submitted October 21, 1924; decided November 29, 1924.

*Taylor E. Cress, C. P. A.*, for the taxpayer.

*Willis D. Nance, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

At the hearing of this appeal the taxpayer introduced in evidence photostat copies of the taxpayer's income-tax returns for the calendar years of 1920 and 1921, a report of the revenue agent making a field examination, and the Commissioner's letter setting forth his claim for a deficiency. L. Z. Dickey, president of the taxpayer corporation, was sworn and testified as a witness on behalf of the taxpayer, and from the documentary and oral evidence the Board makes the following

FINDINGS OF FACT.

1. This taxpayer is a corporation organized under the laws of the State of Mississippi, carrying on a wholesale grocery business at McComb in said State.

2. Taxpayer made income and profits tax returns for the calendar years 1919, 1920, and 1921. Thereafter its returns were examined by a revenue agent in the field upon whose report the Commissioner audited the return for each of said years and claims a deficiency in tax for the year 1921 in the sum of $310.82.

3. The taxpayer's store and warehouse building was constructed in the year 1920, occupied a ground space of 75 by 250 feet, a one story high, walls made of poured concrete 6 inches thick with composition roofing. The building cost in the neighborhood of $39,000, is located

on red sandy ground foundation, and lies immediately alongside the main line and switching tracks of the Illinois Central Railroad Co.

The furniture and fixtures account included one bookkeeping machine, costing approximately $1,000; three typewriting machines, costing approximately $330; and such other equipment as floor trucks, scales, stenciling machines, mailing and registering devices.

In making its income-tax return for the year 1921 the taxpayer claimed deductions on account of depreciation in the sum of $1,163.62 on buildings and $349.51 on furniture and fixtures. These deductions were disallowed by the Commissioner and lesser amounts substituted therefor.

4. During the latter part of the year 1920 and in connection with the construction of the taxpayer's store and warehouse it also constructed a private roadway leading from the highway to the warehouse. This roadway was necessary in connection with the taxpayer's store and warehouse and was a part of the warehouse property. The cost of its construction was not paid until the following year, 1921, when the sum of $669.68, representing the original cost and any subsequent repairs, was entered on the books of the company and paid and claimed by the taxpayer as a deduction for the year 1921. This deduction the Commissioner disallowed.

5. During the construction of the taxpayer's building it borrowed from a person, who either was or intended to become a stockholder in the taxpayer company, the sum of $10,000, for which it gave its note payable on demand with interest at 6 per cent, but with the understanding that this note might be at any time exchanged for preferred stock of the taxpayer corporation, and that this exchange actually occurred on or about March 1, 1921. During the year 1921 the person who loaned the $10,000 and later held that amount of preferred stock, received from the company as the consideration for the use of his money, the sum of $500. The taxpayer claimed this $500 as an interest deduction. This deduction the Commissioner disallowed.

From all three of these disallowed deductions the taxpayer brings this appeal.

### DECISION.

The amounts of $1,173.62 and $349.51, claimed by the taxpayer as depreciation deductions on building and office and store equipment, respectively, are reasonable allowances for exhaustion, wear and tear of properties used in business and must be allowed as deductions from gross income.

The grading and graveling item of $669.68 was largely, if not wholly, the original cost of the construction of a private driveway or approach to the taxpayer's building and is held to have been a capital expenditure and not deductible.

Of the claimed interest deduction of $500, the sum of $100 only is allowable as a deduction on account of interest paid or accrued during the year.

The total tax liability of this taxpayer must be recomputed, and, in the event that such recomputation shall show a deficiency in taxes, the final decision of the Board will be settled on consent or on seven days' notice.

OPINION.

TRUSSELL: The property of this taxpayer used in its business and subject to depreciation and exhaustion consisted of a store and warehouse building and office and store equipment. The evidence shows that the building was constructed in the year 1920; that it stood upon a sandy soil foundation in close proximity to the main line of a railroad, where traffic was heavy and the constant movement of trains caused vibrations both of the soil foundation and of the building. The walls of the building were of poured concrete and only 6 inches in thickness, and its size was 75 by 250 feet. A building of this description cannot be regarded as a substantial structure, and its probable life in the location and surroundings in which it stood can not be compared with the substantial business structures which modern architecture is furnishing in the larger commercial centers of the country. The taxpayer appears to have regarded this building as having a probable life not to exceed 20 years and to have computed his depreciation deduction upon that basis. The Commissioner, on the other hand, applied to this property a rate of 2½ per cent, which might be fair had the building been of the character and in a location more comparable with most commercial structures; but for a building in the location of this one and of the character of construction selected, we are of the opinion that the probable life, as estimated by the taxpayer, is not too short, and that the amount of depreciation claimed by him in his original return is reasonable.

Respecting the furniture and fixtures subject to exhaustion and depreciation, it appears that the larger amount of the value in this account consisted of office equipment the average life of which can not be estimated as more than four or five years and that it can be fairly depreciated on a basis of 20 per cent, and this having been substantially the rate used by the taxpayer, the amount claimed by him appears to us as being reasonable and must be allowed.

Concerning the claimed deduction of $669.68 on account of the grading and graveling of a private roadway leading to the taxpayer's store and warehouse, it appears that this private roadway was first constructed in the latter part of the year 1920; that the building of this roadway was necessary in order that the taxpayer and the public might reach the store and warehouse; and that it was constructed for that purpose, and that after having been constructed occasional repairs to the grade and graveling were necessary in order to keep the same in usable condition. The item of $669.68, charged on the books of the company during the year 1921, represents the total disbursements during that year on account of this roadway, and substantially all of this amount represented the cost of the original construction work which was done during the latter part of the year 1920 but not paid for until 1921. This roadway was a necessary part of the taxpayer's business plant. Neither the taxpayer nor the public could reach its store and warehouse without using this roadway. The roadway itself, therefore, must be regarded as a part of the capital investment of the company and its cost a capital expenditure. It is fairly deducible from the oral testimony that

some small part of this amount may have been for expenses of repairing and regraveling during the year 1921, but the amount of repairs and regraveling, if any, can not now be separated from the original cost of the roadway, and as the original cost of the roadway must be a capital expenditure which is not deductible from income we are compelled to hold that any small items of repairs which may have been included in the total but which can not now be distinguished and separated from the original cost must also be disallowed as a deduction on account of the taxpayer's inability to show what part of the total is capital expense and what part repairs.

It appears that in the latter part of 1920 while the taxpayer was constructing its store and warehouse building, it borrowed the sum of $10,000 for which it gave its note, bearing interest at 6 per cent, payable on demand, together with an accompanying agreement and understanding with the lender that when the taxpayer corporation was prepared to issue some part of its authorized preferred stock the lender would exchange the note for such preferred stock. This exchange occurred on or about March 1, 1921, although later in the same year a part of this $10,000 was repaid to the lender and in the following year the balance of it, and the preferred stock exchanged for the note was turned in and canceled. It seems to have been the theory of the taxpayer that all payments for the use of the $10,000 should be treated as interest. With this view, however, we can not agree. When the lender exchanged his note for preferred stock he ceased to be a creditor and became a stockholder and as such was not entitled to receive interest upon the amount of his investment. It appears, however, that the note bearing interest at 6 per cent was an outstanding obligation of the taxpayer corporation during the months of January and February, 1921, and that the interest which accrued upon this note during those two months must be an interest deduction; that the balance of payments made for the use of the money originally borrowed but converted into preferred stock on March 1, 1921, must be treated as a dividend upon such preferred stock and therefore not deductible as interest.

For the foregoing reasons, the total tax liability of this taxpayer must be recomputed in accordance with the views above stated.