## APPEAL OF SENTINEL PUBLISHING CO.

Docket No. 2756. Submitted July 15, 1925. Decided November 6, 1925.

1. The Commissioner's determination of invested capital through the application of section 326(a)(4) of the Revenue Act of 1918 will not be disturbed in the absence of proof that the provisions of that section should not have been applied.

2. Where the preponderance of evidence shows that the tenancy of the lessee is for an indefinite period, the allowance for exhaustion of the cost of capital additions to the leased premises should be based upon their physical life.

*H. H. Shelton, Esq.*, for the taxpayer.
*A. H. Fast, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This appeal involves a deficiency in income and profits tax for the year 1919 in the amount of $11,671.09, resulting from the disallowance of the deduction of an amount claimed to have been an ordinary and necessary expense in the nature of repairs to leased property, and the exclusion of a certain amount from invested capital on the ground that it represented the excess over the statutory allowance for intangible property paid in for stock. The taxpayer also contends that it is entitled to relief under sections 327 and 328 of the Revenue Act of 1918.

### FINDINGS OF FACT.

Taxpayer is a Tennessee corporation with its principal office in Knoxville. It is successor to the Curtis B. Johnson Publishing Co., which was incorporated under the laws of Tennessee on December 11, 1912, with capital stock of a par value of $100,000.

The Curtis B. Johnson Publishing Co. was organized for the purpose of obtaining the property and business of the Knoxville Sentinel Co., which was engaged in publishing a daily newspaper. The assets of the Knoxville Sentinel Co. included franchises, good will, subscriptions, advertising contracts, machinery, accounts receivable, etc. Its capital stock, two-thirds of which was owned by George F. Milton and one-third by Curtis B. Johnson, had a par value of $100,000. The individuals mentioned also owned the stock of the Chattanooga News Co. in the same proportion.

In 1912 George F. Milton proposed to sell to Curtis B. Johnson his holdings in the Knoxville Sentinel Co. Being unable, however, to provide sufficient funds for that purpose, Johnson proposed to H. M. Johnston, S. M. Johnston, David C. Chapman, and Frank M. Haynes that they organize a corporation for the purpose of acquiring the assets of that company. On November 26, 1912, Johnson entered into a contract with Milton for the purchase of the stock of the latter. So much of the contract as is pertinent to the issues here involved reads as follows:

*THIS AGREEMENT* made and entered into on this 26th day of November, 1912, by and between GEORGE F. MILTON, of Chattanooga, Tenn., party of the first part, and CURTIS B. JOHNSON, of Knoxville, Tenn., party of the second part:

*WITNESSETH:* THAT FOR AND IN CONSIDERATION of the payments hereinafter provided, the transfer of stocks hereinafter provided and the mutual agreements and undertakings hereinafter provided, the party of the first part has agreed and does hereby sell and deliver unto the party of the second part all of the shares of stock owned by the party of the first part in the Knoxville Sentinel Company, a corporation organized and existing under the laws of Tennessee, with its principal office at Knoxville, Tennessee, basing the value of said Knoxville Sentinel Company at $250,000.00, which includes its franchises, good will, subscriptions, advertising contracts, machinery, accounts receivable, and all other assets of every kind and character whatsoever, excepting, however, the obligations now due to the said Knoxville Sentinel Company by the Chattanooga News Company, a corporation under the laws of Tennessee, at the price of $166,666.67, for the two-thirds interest of the party of the first part in the shares of stock of said Knoxville Sentinel Company, which sum of $166,666.67 party of the second part hereby agrees to pay to the party of the first part as follows:

FIRST:

Cash on completion of this contract and on delivery of said certificates of stock, receipt of which is hereby acknowledged____ $40,000.00

SECOND:

One note for $22,166.67 of even date herewith, due thirty days after date with 6% interest after date signed by the party of the second part as principal and by H. M. Johnston, S. M. Johnston, David C. Chapman, and Frank M. Haynes, as sureties _____ 22,166.67

THIRD:

One note for $22,500.00 of even date herewith due sixty days after date with 6% interest from date signed by party of the second part as principal, and by H. M. Johnston, S. M. Johnston, David C. Chapman and Frank M. Haynes, as sureties___ 22,500.00

FOURTH:

All of the shares of stock belonging to party of the second part in the Chattanooga News Company of the par value of $30,666.67 to be transferred to the party of the first part at the value of_____ 32,000.00

FIFTH:

$50,000.00 of first mortgage bonds secured by deed of trust on the franchises, good will, and all tangible property of the Knoxville Sentinel Company which bonds shall bear interest at 6% per annum, payable semi-annually, and shall be payable as to principal as follows: $5,000 due in five years, and $5,000 due every year thereafter until the full amount is paid, with the provision that said bonds may be retired in whole or in part on any interest payment date before maturity, said deed of trust to contain substantially the same provision as that of the Chattanooga News Company, said $50,000.000 of bonds to be the only first mortgage bonds on said property_ 50,000.00

Making the total of_____ 166,666.67

As part of the consideration hereof, it is further agreed as follows:

1st: The party of the second part shall cause the Knoxville Sentinel Company to transfer to party of the first part, all debts due the Knoxville Sentinel Company, by the Chattanooga News Company including checks, overdrafts, open accounts, and all other claims and accounts of every kind whatsoever, and that the said Knoxville Sentinel Company shall release party of the first part from all obligations as endorser, surety, or guarantor of said Knoxville Sentinel Company, and shall hold party of the first part harmless on account of any and all liabilities growing out of his connection with the management of said Knoxville Sentinel Company while he was connected therewith.

2nd: Party of the second part shall cause said Knoxville Sentinel Company to pay all notes on which party of the first part is now liable as endorser or surety for it, or shall so arrange said notes at their maturity as to release party of the first part from any liability whatever thereon in such manner as shall be satisfactory to party of the first part.

3rd: The party of the second part shall cause the personal accounts of the party of the first part, and Mrs. Geo. F. Milton, and Mrs. Sarah F. Milton, with the Knoxville Sentinel Company, to be balanced on the books of the company.

4th: Party of the first part shall cause the account of party of the second part with the Chattanooga News Company up to and including November 30th, 1912, to be paid to party of the second part and shall cause said account to thereupon be balanced in full.

5th: Party of the second part agrees that a certain note executed by party of the first part for $2,250 November 20th, 1912, due ninety days after date now held by the Union Bank of Knoxville, Tennessee, endorsed by Knoxville Sentinel Company, and secured by notes of the party of the second part and stock of the Knoxville Sentinel Company, which $2,250 note is an obligation of the Knoxville Sentinel Company, shall be paid or so arranged as to release the collateral thereto attached and relieve party of the first part of liability thereon.

6th: The party of the first part shall cause the Knoxville Sentinel Company and party of the second part to be released from any and all liability of whatsoever character, whether as surety or endorser, of notes, accounts or other obligations, made or created by party of the first part or by the Chattanooga News Company, and that he will cause party of the second part to be released from all obligations of every kind, whether by bank endorsement or otherwise, which were incident to the conduct of the Chattanooga News Company and will hold party of the second part harmless on account of any and all liabilities growing out of his connection with the management of the Chattanooga News Company while he was connected therewith.  *  *  *.

Subsequently, on December 11, 1912, the Curtis B. Johnson Publishing Co. was incorporated. As to the nature of the transaction whereby the new corporation acquired the assets of the Knoxville Sentinel Co., the record is silent. It appears, however, that the associates of Curtis B. Johnson looked upon the purchase of the stock of George F. Milton as the purchase of the assets of the Knoxville Sentinel Co. With reference to the payments made for the assets, the testimony is contradictory. H. M. Johnston and Wiley L. Morgan testified that cash was paid into the treasury of the Curtis B. Johnson Publishing Co. for stock in that concern, and that the cash

so paid in was used to acquire the assets of the Knoxville Sentinel Co., but in an affidavit, a copy of which was inserted in the petition and which H. M. Johnston testified to be his and to contain the truth, it is stated:

A charter not having been received for the new corporation, it became necessary for the organizers and a few of the subscribers to the stock in the new company to put up the cash and sign the notes that represented the purchase price of the property as per contract dated November 26, 1912, between G. F. Milton and Curtis B. Johnson, it being understood that the signing of these notes and payment of the cash was in lieu of our payment to the new company for the stock we had subscribed for.

The balance sheet of the Knoxville Sentinel Co. in November, 1912, is as follows:

ASSETS

| | |
|---|---:|
| Notes receivable | $3, 910. 40 |
| Notes and account Milton and Chattanooga News | 57, 296. 50 |
| Miscellaneous accounts | 6, 953. 21 |
| Paper stock | 1, 075. 16 |
| Advertising accounts receivable | 21, 281. 66 |
| Good will | 75, 000. 00 |
| Fixed assets | 44, 560. 28 |
| Total assets | 210, 077. 21 |

LIABILITIES

| | |
|---|---:|
| Notes payable | 23, 038. 00 |
| Bank overdraft | 1, 556. 07 |
| Accounts payable | 4, 321. 91 |
| Milton's account | 1, 399. 75 |
| Capital stock | 100, 000. 00 |
| Surplus | 75, 548. 29 |
| Adjustments | 4, 213. 19 |
| Total liabilities | 210, 077. 21 |

The Curtis B. Johnson Publishing Co. took over the books of the Knoxville Sentinel Co. and continued their use instead of opening new books. The only record shown upon the books with reference to the sale of the assets of the old corporation to the new corporation is the issuance of $50,000 in bonds and the assumption by the new corporation of the accounts payable.

Soon after the organization of the Curtis B. Johnson Publishing Co., the building which it occupied was purchased by Curtis B. Johnson, the majority stockholder. Taxpayer continued to occupy this building through the taxable year and up to the present time without a definite lease with the owner of the building. It had occupied the building since the date of its incorporation and the indica-

tions were that its occupancy would be indefinite. It paid the taxes on the premises in addition to an annual rental.

In 1919 the taxpayer desired to rent the third floor ·of the building, which had been vacant for some time and for which it had no use in the operation of its business. By making certain alterations and repairs at a total cost of $2,078.25, it was enabled to rent the floor to the Knoxville Business College. The alterations consisted in putting in a new floor and new skylight, removing certain partitions, and making certain repairs in connection with the roof and stairway. A certain amount of painting and plastering was also done and the walls were repapered.

In its return for the year 1919 the taxpayer deducted this amount as an ordinary and necessary expense on account of repairs.

The Commissioner has disallowed the deduction mentioned and has excluded from invested capital $155,921.18 as the value, in excess of the 25 per cent limitation, of intangible property paid in for stock. As a result, a deficiency in the amount of $11,671.09 was determined.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

LITTLETON: It is contended by the taxpayer that when the Curtis B. Johnson Publishing Co. was incorporated its stock was issued to the incorporators for cash and that this cash, or the equivalent, was used by the corporation for the purpose of purchasing the assets of the Knoxville Sentinel Co., as follows:

| | | |
|---|---|---:|
| (a) | Cash and equivalent | $200,000.00 |
| (b) | Bonds | 50,000.00 |
| (c) | Assumption bills payable | 23,038.00 |
| (d) | Assumption bank overdraft | 1,342.80 |
| (e) | Cancellation notes, checks, and open account of Chattanooga News | 56,362.41 |
| (f) | Cancellation of open account C. B. Johnson | 8,000.00 |
| (g) | Cancellation of open account Mrs. S. F. Milton | 934.09 |
| | Total | 339,677.30 |
| (h) | Less open account G. F. Milton _____ $1,398.84 | |
| | Less open account Mrs. G. F. Milton _____ 4.91 | |
| | | 1,403.75 |
| | Total | 338,273.55 |

On the basis of this contention it is argued that, since the assets of the old corporation were purchased for cash or its equivalent, the provisions of section 326 (a) (4) of the Revenue Act of 1918 do not

apply, and that the exclusion under that section of any amount from the invested capital of the taxpayer was erroneous.

The taxpayer has failed to support these contentions with sufficient evidence, and under these circumstances the determination of the Commissioner will not be disturbed. From the evidence it appears that the Curtis B. Johnson Publishing Co. was organized for the purpose of securing the property and business of the Knoxville Sentinel Co., the stock of which was owned by Curtis B. Johnson and George F. Milton. George F. Milton, who owned two-thirds of the stock in the corporation, proposed to sell his interests to Curtis B. Johnson, who, being unable to provide funds necessary for completing the transaction, entered into an agreement with certain other individuals whereby a new corporation would be organized for the purpose of taking over the business of the Knoxville Sentinel Co. Prior to the organization of the corporation, Curtis B. Johnson entered into a contract with George F. Milton whereby the former acquired the stock of the latter in the Knoxville Sentinel Co. As a part of the consideration of this contract, Curtis B. Johnson agreed to arrange that the claims of the Knoxville Sentinel Co. for certain amounts due from the Chattanooga News should be canceled and, further, that the Knoxville Sentinel Co. would assume payment of certain accounts. It appears that the cash used for the purchase of this stock was furnished by the organizers of the new corporation and that they looked upon the purchase of the stock as the purchase of the assets of the corporation. Beyond this the testimony introduced is vague and contradictory. The record does not show the nature of the transaction whereby the Curtis B. Johnson Publishing Co. acquired the assets of the old corporation. It does not show whether the Knoxville Sentinel Co., being under control of Curtis B. Johnson, exchanged its assets for the stock of the new corporation, subsequently distributing the stock, or whether a sale of the assets to the new corporation was actually effected. Neither does it show that any funds with which the assets of the old corporation might have been acquired were ever paid into the treasury of the new corporation. There is some testimony that cash was paid into the treasury of the new corporation for the stock therein, but, at the same time, there is other testimony to the effect that this same cash was used by Curtis B. Johnson in the purchase of the stock of George F. Milton, and that the payment of this cash and the indorsement of the notes under that contract were in lieu of payments which were subsequently to be made by these individuals to the Curtis B. Johnson Publishing Co. for stock.

Inasmuch as the Commissioner has determined that the property in question, consisting largely of intangibles, was acquired by the new corporation in exchange for its stock, and since the taxpayer

has failed to show that it was not so acquired, the application by the Commissioner of the limitation imposed by section 326 (a) (4) of the Revenue Act of 1918 in computing the taxpayer's invested capital is approved.

During the taxable year the taxpayer made certain alterations on the third floor of the building occupied by it at a cost of $2,078.25, in order that it might lease that portion of the building to the Knoxville Business College. The term for which it was leased to the college is not shown. In its return it deducted the amount so expended as ordinary and necessary expenses in the nature of repairs. It appears, however, that the greater portion, at least, of the expenditures made in this regard were of a capital nature. The building of a new skylight, the changing of the partitions, and a complete alteration of the style of that floor of the building, in order to suit the particular requirements of a certain tenant, can hardly be classed as repairs. It is possible that a certain portion of the amount expended did represent repairs, but, in the absence of any definite information with reference to the amount which was actually expended in repair work, we are unable to determine what amount is properly deductible.

It is contended by the taxpayer that the premises were occupied under a tenancy from year to year and that the lease of the taxpayer under that arrangement expired on December 31, 1919, and, further, since the lease expired in the same year in which the expenses were incurred, it should be allowed to deduct the total amount of these expenditures even though they should be held to be of a capital nature. With this contention we are unable to agree. At the time the alterations and improvements were made the taxpayer had occupied the building for a number of years, and although it had no written agreement with reference to its occupancy, it had every reason to believe that such occupancy would be for an indefinite period. The building was owned by the owner of the majority stock of the taxpayer and had been occupied by it under the same arrangement since the date of incorporation in 1911. If the taxpayer had held a lease for a definite period it would have been entitled to spread the amount expended for improvements over the remaining period of the lease. The right to exhaust the cost of capital additions over a period shorter than their physical life depends upon proof that the usefulness of property to taxpayer as an income-producing factor will terminate prior to the end of the physical life of such property. Where the weight of evidence shows, as in this case, that the occupancy of the premises by the taxpayer was for an indefinite period, the allowance for exhaustion, wear, and tear must be based upon the physical life of the property.

As to what rights the taxpayer might have in the event the tenancy should be ended prior to the exhaustion of the property, we are not called upon to say, inasmuch as that proposition is not before us in this appeal.

The taxpayer's claim for the computation of its profits tax for the year 1919 under the provisions of section 328 of the Revenue Act of 1918 is denied, on the ground that it has failed to introduce sufficient evidence to bring itself within the provisions of section 327 of said Act.