*1215 OPINION.
Littleton:
It is contended by the taxpayer that when the Curtis B. Johnson Publishing Co. was incorporated its stock was issued to the incorporators for cash and that this cash, or the equivalent, was used by the corporation for the purpose of purchasing the assets of the Knoxville Sentinel Co., as follows:
(a) Gash and equivalent-$200, 000.00
(b) Bonds___ 50*000.00
(c) Assumption bills payable-:- 23, 038.00
(d) Assumption bank overdraft- 1,342.80
(e) Cancellation notes, checks, and open account of Chattanooga N'ews_ 56,362.41
(f) Cancellation of open account C. B. Johnson- 8,000.00
(g) Cancellation of open account Mrs. S. IT. Milton- 934. 09
Total_ 339, 677.30
(h)Less open account G. F. Milton-$1,398.84
Less open account Mi’s. G. F. Milton- 4. 91
- 1,403. 75
Total_ 338, 273. 55
On the basis of this contention it is argued that, since the assets of the old corporation were purchased for cash or its equivalent, the provisions of section 326 (a) (4) of the Revenue Act of 1918 do not. *1216 apply, and that the exclusion under that section of any amount from the invested capital of the taxpayer was erroneous.
The taxpayer has failed to support these contentions with sufficient evidence, and under these circumstances the determination of the Commissioner will not be disturbed. From the evidence it appears that the Curtis B. Johnson Publishing Co. was organized for the purpose of securing the property and business of the Knoxville Sentinel Co., the stock of which was owned by Curtis B. Johnson and George F. Milton. George F. Milton, 'who owned two-thirds of the stock in the corporation, proposed to sell his interests to Curtis B. Johnson, who, being unable to provide funds necessary for completing the transaction, entered into an agreement with certain other individuals whereby a new corporation would be organized for the purpose of taking over the business of the Knoxville Sentinel ”Co. Prior to the organization of the corporation, Curtis B. Johnson entered into a contract with George F. Milton whereby the former acquired the stock of the latter in the Knoxville Sentinel Co. As a part of the consideration of this contract, Curtis B. Johnson agreed to arrange that the claims of the Knoxville Sentinel Co. for certain amounts due from the Chattanooga News should be canceled and, further, that the Knoxville Sentinel Co. would assume payment of certain accounts. It appears that the cash used for the purchase of this stock was furnished by the organizers of the new corporation and that they looked upon the purchase of the stock as the purchase of the assets of the corporation. Beyond this the testimony introduced is vague and contradictory. The record does not show the nature of the transaction whereby the Curtis B. Johnson Publishing Co. acquired the assets of the old corporation. It does not show whether the Knoxville Sentinel Co., being under control of Curtis B. Johnson, exchanged its assets for the stock of -the new corporation, subsequently distributing the stock, or whether a sale of the assets to the new corporation was actually effected. Neither does it show that any funds with which the assets of the old corporation might have been acquired were ever paid into the treasury of the new corporation. There is some testimony that cash was paid into the treasury of the new corporation for the stock therein, but, at the same time, there is other testimony to the effect that this same cash was used by Curtis B. Johnson in the purchase of the stock of George F. Milton, and that the payment of this cash and the indorsement of the notes under that contract were in lieu of payments which were subsequently to be made by these individuals to the Curtis B. Johnson Publishing Co', for stock.
Inasmuch as the Commissioner has determined that the property in question, consisting largely of intangibles, was acquired by the new corporation in exchange for its stock, and since the taxpayer *1217 has failed to show that it was not so acquired, the application by the Commissioner of the limitation imposed by section 326 (a) (4) of the Revenue Act of 1918 in computing the taxpayer’s invested capital is approved.
During the taxable year the taxpayer made certain alterations on the third floor of the building occupied by it at a cost of $2,078.25, in order that it might lease that portion of the building to the Knoxville Business College. The term for which it was leased to the college is not shown. In its return it deducted the amount so expended as ordinary and necessary expenses in the nature of repairs. It appears, however, that the greater portion, at least, of the expenditures made in this regard were of a capital nature. The building of a new skylight, the changing of the partitions, and a complete alteration of the style of that floor of the building, in order to suit the particular requirements of a certain tenant, can hardly be classed as repairs. It is possible that a certain portion of the amount expended did represent repairs, but, in the absence of any definite information with reference to the amount which was actually expended in repair work, we are unable to determine what amount is properly deductible.
It is contended by the taxpayer that the premises were occupied under a tenancy from year to year and that the lease of the taxpayer under that arrangement expired on December 31, 1919, and, further, since the lease expired in the same year in which the expenses were incurred, it should be allowed to deduct the total amount of these expenditures even though they should be held to be of a capital nature. With this contention' we are unable to agree. At the time the alterations and improvements were made the taxpayer had occupied the building for a number of years, and although it had no written agreement with reference to its occupancy, it had every reason to believe that such occupancy would be for an indefinite period. The building was owned by the owner of the majority stock of the taxpayer and had been occupied by it under the same arrangement since the date of incorporation in 1911. If the taxpayer had held a lease for a definite period it would have been entitled to spread the amount expended for improvements over the remaining period of the lease. The right to exhaust the cost of capital additions over a period shorter than their physical life depends upon proof that the usefulness of property to taxpayer as an income-producing factor will terminate prior to the end of the physical life of such property. Where the weight of evidence shows, as in this case, that the occupancy of the premises by the taxpayer was for an indefinite period, the allowance for exhaustion, wear, and tear must be based upon the physical life of the property.
*1218 As to what rights the taxpayer might have in. the event the tenancy should be ended prior to the exhaustion of the property, we are not called upon to say, inasmuch as that proposition is not before us in this appeal.
The taxpayer’s claim for the computation of its profits tax for the year 1919 under the provisions of section 328 of the Revenue Act of 1918 is denied, on the ground that it has failed to introduce sufficient evidence to bring itself within the provisions of section 327 of said Act.