APPEAL OF UNION TERMINAL COLD STORAGE CO.

Docket No. 4319. Decided July 20, 1926.

The determination of the Commissioner that inadequate depreciation had been deducted in prior years is approved in the absence of sufficient evidence to show that it is erroneous.

*Edward Thompson, C. P. A.*, for the petitioner.
*L. C. Mitchell, Esq.*, for the Commissioner.

Before GRAUPNER[1] and TRAMMELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the year 1919 in the amount of $8,827.97, of which $1,300 is in controversy. The deficiency results from a reduction of invested capital on account of insufficient depreciation in prior years.

FINDINGS OF FACT.

The taxpayer is a New Jersey corporation with offices in New York City. Its plant is located in Jersey City, N. J., and it has been engaged in the cold storage business since 1905, handling perishable food products.

The capacity of the plant is about 4,000,000 cubic feet. It consists of eight buildings, seven of which are used for cold storage of perishable goods, and one for a packing house. Four of the buildings were erected in 1905, two in 1910, and two during the World War. Three of these buildings are frame and the others are brick and reenforced concrete. No evidence was offered as to the cost of the buildings or equipment, and no March 1, 1913, value was established.

The power plant consists of a building 75 by 100 feet, of four to six stories, equipped with piping, exchanger coils, insulation and machinery. Pipes 18 to 20 feet long, are used for condensers and absorbers in liquifying and purifying ammonia, turning ammonia gas into pure anhydras ammonia. The ammonia coolers contain a great many pipes used for circulation of brine which is pumped through the coolers and then out to the warehouse in large pipes and distributed in each building. The pipes are constantly wearing out and causing leaks and have to be renewed. Men are regularly employed repairing brine leaks and replacing leaky pipes. The buildings are insulated to retain the cold. The condensers, absorbers, dehydrator coils and exchanger coils, as well as the insulation, are constantly in need of repairs and are watched very closely. Leaks are repaired and old pipes frequently replaced with new ones. The repairs and renewals of pipes were charged to operating expense.

---

[1] This decision was prepared during Mr. Graupner's term of office.

When repairs were needed in the walls, insulation or machinery, they were made in such a way as to keep the buildings and equipment in good condition. Certain replacements and betterments were charged to expense. No depreciation was taken on buildings and equipment from 1905 to 1918. No evidence was submitted to show what depreciation, if any, was taken in 1919.

### OPINION.

TRAMMELL: The Commissioner reduced the invested capital of the taxpayer for 1919 upon the ground that it failed to deduct an adequate amount in prior years for the exhaustion, wear and tear of the physical assets used in its business. The taxpayer contends that no reduction should be made on this account for the reason that it had kept up its buildings and equipment by repairs and replacements which had been charged to expense and not capitalized.

The allowance provided by statute for exhaustion, wear and tear of assets used in business is in addition to the deduction allowed for amounts expended for repairs. The fact that assets are constantly being repaired does not prevent exhaustion thereof due to wear and tear, and if proper deductions are not made for such exhaustion, the earned surplus is erroneously stated for the taxable year. A taxpayer may, however, replace certain assets and make permanent improvements on others and erroneously charge such expenditures to expense instead of to capital account, so that the amount of exhaustion due to wear and tear may be balanced by the capital acquisitions or expenditures, in which case its books may properly reflect its earned surplus as of the beginning of the taxable year, although no deductions were taken on account of exhaustion, wear and tear. In this case there is no evidence as to whether this was true or not. On the other hand it is possible that taxpayer may not use a consistent method of charging off depreciation. It may take a small deduction one year, none at all in another year, and a large deduction in another. In such a case the question to be determined, with respect to the earned surplus of the taxable year, is: Was a fair and reasonable amount deducted in prior years, taking the entire amount of deductions as a whole? However, evidence tending to prove that the assets as of the beginning of the taxable year had a value equal to the cost of such assets is not sufficient to establish the fact that an adequate and reasonable deduction was made on account of the exhaustion, wear and tear thereof. The value of assets may actually increase, but this does not mean that they are not gradually being exhausted in use.

In his case, while there is some evidence that certain replacements, renewals and betterments were charged to expense, there is no evi-

dence as to the amount of such charges, and we are not in a position to say that such charges or such amounts were sufficient, taken as a whole, to overcome the fact that no deduction whatever was taken on account of exhaustion, wear and tear of assets. The Commissioner has determined that a reasonable deduction on account of depreciation of the physical assets used in the business was $174,585.35. The presumption of the correctness of the determination of the Commissioner is not overcome by the evidence in this case, and accordingly such determination is approved.

> *Order of redetermination will be made on 15 days' notice under Rule 50.*