Thomas J. McGinty v. Commissioner.
McGinty v. Commissioner
Docket Nos. 1921, 2126.
United States Tax Court
1944 Tax Ct. Memo LEXIS 141; 3 T.C.M. (CCH) 838; T.C.M. (RIA) 44270; August 9, 1944
*141 Raymond L. Davis, Esq., 600 Hickox Bldg., Cleveland, O., for the petitioner. Law rence R. Bloomenthal, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: These proceedings were consolidated. Docket No. 1921 involves income tax deficiencies for the years 1932 to 1938, inclusive, as follows: Year
Amount
1932
$4,927.57
1933
3,661.39
1934
763.57
1935
5,021.51
1936
6,135.96
1937
3,347.67
1938
739.93 Docket No. 2126 involves a deficiency determined for the year 1939 in the amount of $2,788.39. The issues are: (1) whether the Bainbridge Breeders and Racing Association was a partnership, and whether the petitioner was a member thereof during the taxable years in question; (2) whether the cost of the grading and slag used to construct a portion of the oval track and to provide parking space for customers was a capital expenditure subject to depreciation; and (3) whether sums paid by the Association to Geauga County and to Bainbridge Township are deductible from gross income as either taxes paid or as ordinary and necessary business expenses. [1]
*142 The cases were submitted on oral testimony and documentary evidence. Findings of Fact The petitioner is an individual residing at Cleveland, Ohio, and filed his income tax returns for the taxable years in question with the collector of internal revenue at Cleveland, Ohio. In the year 1928, the petitioner, Joseph Cattarinich (hereinafter called "Cattarinich") and Robert S. Eddy, Jr. (hereinafter called "Eddy") orally agreed to engage in the business of conducting races in the Township of Bainbridge, Geauga County, Ohio, under the name of the Bainbridge Breeders and Racing Association (hereinafter called "Bainbridge"). Cattarinich acquired title to certain lands upon which it was agreed that the necessary buildings and improvements would be constructed for holding racing meetings. Title to the lands was to remain in Cattarinich as owner for the use of which it was agreed he was to receive a rental of $7,000 per year during years racing was conducted thereon. It was further agreed that Cattarinich was not to sell the property without the consent of both Eddy and the petitioner. In the event a sale was agreed upon, the portion of the purchase price allocable to the improvements was *143 to be divided according to the respective interests. Later in 1943, after the death of Cattarinich, the land and the improvements were purchased by the surviving partners for $30,000, of which amount $15,000 was paid for the fee and $15,000 for the sixty per cent interest which Cattarinich owned in the improvements made thereon out of the funds of the partnership. The respective interests of the individuals in the venture were fixed by the following percentages, i.e.: Cattarinich, sixty-five per cent; Eddy, twenty per cent; and the petitioner, fifteen per cent. Later, but prior to 1932, the petitioner acquired from Cattarinich an additional five per cent interest. Capital contributions, profits and losses were to be on the basis of the respective interests of each individual. At the time the oral arrangement was made the petitioner was unable to make his full contribution to the capital fund, and a substantial part was advanced by Cattarinich, who was later reimbursed by the petitioner. Complete books of account were kept by an accountant, showing the respective capital accounts based on the aforementioned percentages. Later capital contributions, as well as profits and losses, were *144 adjusted upon a like percentage. Income tax returns on partnership forms were filed for the respective years in question, reflecting the respective interests of the said individuals. In preparing the oval track as a racing strip, it was necessary, because of the swampy nature of the land, to build up a strip about 5/8 of a mile long, 35 feet deep and 85 feet in width to achieve a level racing track. To provide parking space for patrons and to have firm roads to the various structures located upon the premises, an area of about 10 acres was graded, covered with slag and cinders to a depth of about 8 inches. The cost of these improvements was $194,999.84. According to the books, a reserve for depreciation of this item of $194,999.84 for grading and slag was set up on the books of Bainbridge on the basis of a 30-year life and depreciation was claimed at that rate on the income tax returns filed for Bainbridge during the years 1932 to 1939, inclusive. By oral agreement between Bainbridge and certain individuals, officers or employees of Bainbridge Township and Geauga County, during the years 1932 and 1933 there was collected from customers attending the racing meetings held under the *145 auspices of Bainbridge and turned over to each of the governing authorities of Bainbridge Township and Geauga County, municipal corporations, the following amounts, i.e.: 1932, $10,770, and 1933, $3,330.50. Bainbridge ceased holding horse racing meetings in the year 1935. From 1935 to 1938, the same individuals conducted dog racing meets at the track under the name of Geauga Greyhound Association (hereinafter called "Greyhound"). During the years 1935 to 1938, inclusive, by an agreement similar to that above, Greyhound collected and turned over to the authorities of Bainbridge Township and Geauga County the following amounts: 1935, $5,311.37; 1936, $8,511.93; 1937, $7,479.45 and 1938, $2,185.51. The amounts collected and turned over to these municipal authorities were designated as an admission tax or "service charge" on the tickets and were collected upon complimentary tickets as well. When collected they were placed in a so-called "purse account". These amounts were collected and paid over to the authorities pursuant to an oral understanding with authorities of the municipalities, and not pursuant to any duly enacted resolution, ordinance, regulation or special assessment of the *146 municipal governing bodies. The amounts were used by the municipalities for municipal purposes. The amounts collected and turned over to the municipalities were not reported as part of the gross income on the partnership returns filed, but were treated by the respondent as additional gross income in computing the contested deficiencies determined against the petitioner. The petitioner in his income tax returns for the years in question claimed as deductions 20 per cent of the losses reported on the respective partnership income tax returns filed by Bainbridge. The respondent disallowed the deductions in computing the contested deficiencies determined against the petitioner, on the ground that the existence of a partnership and the membership of the petitioner, together with his interest therein, had not been sufficiently established. Bainbridge was a partnership during the taxable years. The petitioner had a 20 per cent interest therein during that period. Opinion During the respective taxable years the petitioner on his income tax returns claimed deductions to the extent of 20 per cent of the losses sustained by Brainbridge, an alleged partnership. The respondent disallowed them, *147 since the existence of a legal partnership and the interest of the petitioner therein had not been sufficiently established. The action of the respondent was presumably based upon the fact that no formal written agreement of partnership had been executed. The burden rests upon the petitioner to prove that an oral agreement of partnership to carry on a lawful business was made, and the terms thereof. An oral partnership is recognized in the State of Ohio. Snyder Mfg. Co. v. Snyder, 54 Ohio St. 344; 43 N.E. 325. Cf. Nancy J. Ryman et al., 5 B.T.A. 1288. Bainbridge was engaged in the business of breeding, training and racing of horses for purses for the period 1928 to 1934, inclusive. As such it was conducting a legal enterprise. Central Trust & S.D. Co. v. Respass, 112 Ky. 606; 66 S.W. 421. The documentary proof and the testimony of disinterested witnesses clearly establishes that the petitioner along with his associates, Cattarinich and Eddy, intended the existence of a relationship under which there would be a community of interest *148 and profits as well as a pro rata contribution to the losses. We have therefore found as a fact that Bainbridge was a partnership during the taxable years. Paul v. Cullum, 132 U.S. 539, 551; Beauregard v. Case, 91 U.S. 134; 40 Am. Jur. Partnership, par. 32. That the petitioner's interest therein was 20 per cent is likewise convincingly established. We have likewise found that to be the fact. In arriving at the net taxable income of Bainbridge for the taxable years, depreciation was deducted by that partnership with respect to a capital expenditure of $194,999.84 for slag and grading in building up the land to make a level race track, for roads and parking space for customers. The respondent disallowed that deduction on the ground that this capital expenditure was not of a depreciable character. This issue, as submitted, is limited to the question as to whether these particular improvements were depreciable. Respondent argues that these improvements became an inseparable part of the land which Bainbridge did not own, and that they were therefore not depreciable. He cites no authority for this position nor has independent *149 search revealed any. The Revenue Acts applicable to the years in question authorized a reasonable allowance for exhaustion, wear and tear of property used in a trade or business. [2]
If the improvements were depreciable it matters not who owned the fee title. The question is who made the capital investment which is to be recovered over the period of exhaustion of the property. City Nat. Bank Building Co. v. Helvering, 98 Fed. (2d) 216; F. & R. Lazarus & Co., 32 B.T.A. 633; National City Bank of Seattle, 1 B.T.A. 139. The partnership agreement provided that the cost of improvements, including those with which we are here concerned, should be allocated pro rata among the partners in the event of the sale of the fee. The improvements were not constructed to improve the fee. They were required as a necessary part of the plant. They were essential to the business of racing in which the partnership was engaged. They were undoubtedly used in the "trade or business" of the partnership. *150 It follows that if these improvements are depreciable, under the issue as submitted the petitioner must prevail. National City Bank of Seattle, supra.See also Appeal of Sentinel Publishing Co., 2 B.T.A. 1211; Thatcher Medicine Co., 3 B.T.A. 154. The cost of grading and gravelling to construct a private road to provide patrons with access to a store was held to be a depreciable capital expenditure in L. Z. Dickey Grocery Company, 1 B.T.A. 108. In the case of Lord & Bushnell Co. 7 B.T.A. 86, a new lumber yard had been constructed by the taxpayer and the swampy ground upon which it was built was filled in and graded, a railroad track was graded and laid and "plank roads were constructed by filling with cinders, laying down oak and maple stringers * * *." Depreciation was allowed on those capital expenditures. A tunnel constructed under a public road between two buildings used in the business of the taxpayer, was held to be a depreciable capital expenditure in E. W. Edwards & Son v. Clark, 29 Fed. Supp. 671, *151 and in Ewing B. Swaney, 5 B.T.A. 990, the cost of liming soil. In Clinton Cotton Mills, Inc. v. Commissioner, 78 Fed. (2d) 292, expenditures for sidewalks, curbs, gutters and drains were held to be depreciable capital expenditures. We think these comparable illustrations sufficiently demonstrate the improvements here in question were of a depreciable character. Moreover, the uncontradicted testimony here establishes that these improvements, with which we are here concerned, did in fact depreciate during the taxable years. We conclude that the improvements in question were depreciable. That the partnership deducted, and was allowed, the expense of annual repairs or maintenance does not disturb this conclusion. Union Terminal Cold Storage Co. 4 B.T.A. 264. The respondent makes no claim that the rate of depreciation used by petitioner is not proper. The petitioner is sustained on this issue. Since it is conceded that they were not taxes, the final issue is whether the amounts collected and paid over to the municipal authorities of Bainbridge Township and Geauga County are includable in gross *152 income and, if includable, whether they are deductible as ordinary and necessary expenses of the partnership racing business. The partnership deducted, and was allowed, payments for police employed by it on the partnership premises. But the testimony is that the municipalities were put to increased expense because of the races. Additional police outside the premises of the partnership, and additional road management and maintenance were required. This is not unreasonable. Places of amusement, where large crowds gather, necessarily impose added burdens upon the municipalities in which they are located. Whether the partnership was conducting a legal or illegal business - and there is nothing convincing that the latter is true here - neither municipality, so far as this record reveals, took the necessary action as a municipal corporation legally authorizing anybody to collect the "service charge". Thus the persons who purportedly acted for the municipalities in agreeing to and receiving these moneys from the partnership may have been acting without proper authorization. That lack of authority might have permitted the recovery of these charges by those patrons of the partnership who *153 originally paid them. See Boston Consolidated Gas Co. v. Commissioner, 128 Fed. (2d) 473. But it did not give the partnership any unfettered right to such funds. The partnership never treated these funds as its own. It collected them for and paid them to the individuals purportedly representing the municipalities - under the terms of their oral agreement so to do. Those individuals deposited these moneys with the general funds of the respective municipalities by which they were used for municipal purposes. Accordingly, we hold that the "service charge" collected by petitioner and paid to the two municipalities during the several taxable years is not includable in the income of petitioner for those years. See Corbett Investment Co. v. Helvering, 75 Fed. (2d) 525. Decision will be entered under Rule 50. Footnotes
1. Section 23 (a), Revenue Acts 1932-1936. Section 23 (a)(1), Revenue Act 1938. Section 23 (a)(1), Internal Revenue Code↩.
2. Sec. 23 (k), Rev. Acts 1933-1934. Sec. 23 (1), Rev. Acts 1935-1938. Sec. 23 (1), Internal Revenue Code↩.