**CONSUMERS POWER COMPANY,**
Plaintiff-Appellee,

v.

**UNITED STATES of America,**
Defendant-Appellant.

**CONSUMERS POWER COMPANY,**
Plaintiff, Cross-Appellant,

v.

**UNITED STATES of America,**
Defendant, Cross-Appellee.

Nos. 19916, 19917.

United States Court of Appeals,
Sixth Circuit.

June 5, 1970.

Richard W. Perkins, Dept. of Justice, Washington, D. C., for the United States; Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Attys., Dept. of Justice, Washington, D. C., on the brief.

Clifford H. Domke and William O. Allen, Jackson, Mich., on the brief for Consumers Power Co.

Before COMBS and BROOKS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

BROOKS, Circuit Judge.

This appeal involves questions relating to the federal income tax liability of the plaintiff-appellee, Consumers Power Company. Consumers brought suit to recover a portion of the income taxes it paid for the taxable years 1954 through 1957. Two issues are presented on review. First, Consumers argues that it should have been able to deduct from its gross income as ordinary and necessary business expenses payments made to the Electric Companies Advertising Program (ECAP), an organization of privately owned electric power companies, for a national advertising

campaign carried on during the four year period in question. Second, Consumers contends that it was correct in deducting the face amount of certain death benefit certificates it issued to retiring employees in the years in which the certificates were issued rather than in the years when the death benefits were actually paid. The District Court disallowed the deductions for the expenses of the advertising program, but permitted Consumers to deduct the face amount of the death certificates in the years in which they were issued. See, 299 F. Supp. 1180 (1969).

The payments Consumers made to the Electric Companies Advertising Program were its pro rata share of the cost of a national advertising campaign. An examination of the materials used show the campaign had a two-fold purpose: 1. explaining how electricity can make for more comfortable living, and 2. pointing out the "bad features" of publicly owned electric power companies as compared to privately owned companies. The advertisements for which the District Court disallowed deductions were the ones which in some way attacked public power. Some of the disallowed advertisements made a hard sell attack on public power calling it "creeping socialism", while others simply suggested that private power companies can provide faster service because, unlike with publicly owned power companies, there was no waiting to have funds appropriated for the needed electrical facilities. Many of the advertisements were directed toward the Tennessee Valley Authority, and several admonished the public to let their congressmen know how they felt about governmental ownership of electric power companies.

■ The deductibility of the cost of these advertisements is governed by whether it was an "ordinary and necessary" business expense (Title 26 U.S.C. § 162). The Internal Revenue has promulgated 26 C.F.R. § 1.162.20(b) [1] in

\* \* \* \* \*

conjunction with the "ordinary and necessary" business expense section of the Code. This regulation has been considered by the courts at various times. See, Cammarano v. United States, 358 U.S. 498, 79 S.C. 524, 3 L.Ed.2d 462 (1959); American Hardware & Equipment Company v. Commissioner of Internal Revenue, 202 F.2d 126 (4th Cir. 1953); Roberts Dairy Company v. Commissioner of Internal Revenue, 195 F.2d 948 (8th Cir. 1952); Southwestern Electric Power Company v. United States, 312 F.2d 437, 160 Ct.Cl. 262 (1963). And our review of the disallowed advertisements in light of the interpretation given 26 C.F.R. § 1.162.20 (b) by these cases supports the District Court's determination of nondeductibility. Several of the advertisements are what might be called border line cases for deductibility, but we defer to the District Court's judgment in those cases. However, it should be noted that this regulation, 26 C.F.R. § 1.162.20(b), is apparently capable of infinitely encompassing proportions. In a situation similar to the present one, where no legislation is pending, and a company's

---

1. (b) Taxable years beginning before January 1, 1963—(1) In general. (i) For taxable years beginning before January 1, 1963, expenditures for lobbying purposes, for the promotion or defeat of legislation, for political campaign purposes \* \* \* or for carrying on propaganda (including advertising) related to any of the foregoing purposes are not deductible from gross income. For example, the cost of advertising to promote or defeat legislation or to influence the public with respect to the desirability or undesirability of proposed legislation is not deductible as a business expense, even though the legislation may directly affect the taxpayer's business.

\* \* \* \* \*

(2) Expenditures for promotion or defeat of legislation. For purposes of this paragraph, expenditures for the promotion or the defeat of legislation include, but shall not be limited to, expenditures for the purpose of attempting to—

(i) Influence members of a legislative body directly, or indirectly by urging or encouraging the public to contact such members for the purpose of proposing, supporting, or opposing legislation,

\* \* \* \* \*

**80**

chief competitor is governmentally owned, the regulation could possibly be extended to disallow a deduction for the cost of an advertisement which simply conveys a competitive message. It is not inconceivable that the expenditures for this type of advertisement might fall into the disallowed category of expenditures which according to the Internal Revenue "include, but shall not be limited to * * *" attempts to "influence members of a legislative body * * * indirectly by urging or encouraging the public to contact such members for the purpose of proposing, supporting or opposing legislation." Such type of coercive use of this regulation to discourage private industry from competing in an ordinary business fashion with a publicly owned business would clearly not be in keeping with the intent of the "ordinary and necessary" business expense provision of the Code.

■ The other question presented on this appeal is whether Consumers should have been able to deduct the amount of certain death benefit certificates issued to retiring employees in the year the certificates were issued or only in the year the benefits were actually paid. The District Court allowed the deduction in the year in which the certificates were issued. It based its decision in part on the argument that Title 26 U.S.C. § 404 (a) and (a) (5) [2] would not apply under these circumstances because Consumers' death plan was not a plan for "deferred compensation". However, 26 C.F.R. § 1.404(a)–1 (a) (1) states that "section 404(a) also governs the deductibility of unfunded pensions and death benefits paid directly to former employees or

their beneficiaries." In addition, death benefit plans have in the past been classified as compensations. See, New York Post Corporation v. Commissioner of Internal Revenue, 40 T.C. 882 (1963); Seavey & Flarsheim Brokerage Company v. Commissioner of Internal Revenue, 41 B.T.A. 198 (1940). Our examination of Consumers' death benefit plan, and the circumstances surrounding its establishment, leads us to the conclusion that it was a program of deferred compensation for services rendered. Thus, Title 26 U.S.C. § 404(a) controls and Consumers can only deduct the amount of death benefits paid under its plan in the years in which the payments are actually made.

Affirmed in part, reversed in part.

---

2. * * * if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such * * * compensation shall not be deductible under section 162 or section 212; but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year.

* * * * *

(5) In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3) (not here involved), if the employee's rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the * * * compensation is paid.