Trailmont Park, Inc. v. Commissioner.
Trailmont Park, Inc. v. Commissioner
Docket No. 4324-70 SC.
United States Tax Court
T.C. Memo 1971-212; 1971 Tax Ct. Memo LEXIS 117; 30 T.C.M. (CCH) 871; T.C.M. (RIA) 71212; August 25, 1971, filed *117 Petitioner incurred approximately $190,000 improvement costs in the development and construction of a mobile home park. It assigned a useful life of 15 years to these improvements. In 1967 it claimed $8,483.51 of this amount as depreciation and $12,816.45 was claimed as depreciation in 1968. Respondent determined that a portion of these costs, $1,607.66 in 1967 and $2,410.59 in 1968, were attributable to the cost of clearing, grading,e, nondepreciable. terracing, and landscaping the land and, therefore, nondepreciable. Held: These costs were an integral part of the developemnt and construction of the mobile home park and, accordingly, are depreciable over the useful life of the trailer pads and other improvements, for which the respondent allowed a fifteen-year life. Quentin L. Housholder, Suite 400, Sthalmanbldg., Nashville, Tenn., for the petitioner. John B. Harper, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in petitioner's income tax for the years and in the amounts as follows: Taxable Year Ending
Deficiency
June 30, 1967
$353.55
June 30, 1968
556.71
The only issue to be decided is whether a depreciation deduction should be allowed for the cost of improvements, consisting of clearing, grading, terracing, and landscaping, made to land that was being developed as a mobile home park. Findings of Fact Petitioner was incorporated under the laws of the State of Tennessee on July 1, 1964. On the date the petition was filed in this case, petitioner's principal office was located at 6311 East Valley Road, Nashville, Tennessee. For the taxable years ended June 30, 1967, and June 30, 1968, petitioner filed Federal corporate income tax returns on Form 1120 with the district director of internal revenue, Nashville, Tennessee. Petitioner is engaged in the trade or business of developing and leasing mobile *119 home parking facilities. During the taxable years in question petitioner had 131 parking facilities in its mobile home park available for leasing. Included in a parking facility is an asphalt or crushed stone runway, sometimes referred to as a pad, to accommodate the trailer, a concrete patio and a paved driveway where the tenant's car is parked. The mobile home park includes recreational areas and a swimming pool for its tenants. In addition, the park provides the utility connections for each trailer, including electricity, water, and sewers. Petitioner purchased 16 acres of land, on which the mobile home park is located, for $27,000 in 1964 and received a two-year option on 14 additional acres for $14,500, which it exercised. The improvements in controversy were made on the original 16 acres. The remaining 14 acres are still unimproved. The land was mostly sloped, and in order to make it suitable for use as a mobile home park it was necessary that extensive grading and shaping be done to it. The land was approximately one-third wooded and petitioner hired a contractor to clear the land and then to shape it in a form that would be useful to park mobile homes. Because of the incline *120 of the land, it was necessary to level out a place for each one of the 131 units and then to shape the land either upward or downward, according to the grade, in order to get the next level pad. When this work was completed, the land had a terraced look to it, with the level places accommodating the trailer pads. Roadbeds were also graded to form streets and driveways throughout the mobile home park. After the initial rough grading was done, the utility lines were installed, the concrete patios were poured and the roads and driveways were paved. An average of four truckloads of top soil was put back on each individual unit. Each lot was then finish graded, hand raked, seeded, fertilized, and planted with some shrubbery. The average length of each trailer pad was 90 feet. Included in this 90 feet was 25 feet allotted to the paved driveway for the tenant's car. The cost of the clearing, grading and shaping of the land was $19,555.86. This 872 appeared on petitioner's books as grading and drainage. The cost of the finish grading and landscaping was $17,603.05 and appeared on petitioner's books as finish grading and fertilizer. The total cost of the improvements was approximately *121 $190,000. Petitioner assigned a useful life of 15 years to these improvements. In 1967 it claimed a depreciation deduction in the amount of $8,483.51. In 1968 it claimed a depreciation deduction in the amount of $12,816.45. In the statutory notice of deficiency respondent stated: It is determined that there is included in the deduction for depreciation claimed on your tax returns for the fiscal years ended June 30, 1967 and June 30, 1968, the amounts of $1,607.66 and $2,410.59, respectively, representing depreciation on the costs of clearing, grading, terracing, and landscaping land. Land and improvements associated therewith are nondepreciable property. It has not been established that these costs were incurred for land improvements which were not associated with the land itself. The deductions for depreciation are, therefore, not allowable and your taxable income for each year is increased accordingly. Opinion The issue to be decided is whether depreciation should be allowed on certain improvements consisting of clearing, grading, terracing, and landscaping, made to land, in the development of a mobile home park. It is respondent's contention that the improvements in question *122 are "inextricably associated" with the land itself and thus, are not depreciable. Petitioner, on the other hand, contends that these improvements were not associated with the land itself, but rather with the construction of the trailer pads and patios on the trailer lots and as a result, an allowance for depreciation should be given for these improvements over the same life allowed to the trailer pads. Respondent allowed a fifteen-year life for such improvements. We agree with petitioner. Section 167 of the Code [1] provides that there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) of property used in the trade or business of the taxpayer. Section 1.167(a)-2 of the Regulations provides that the depreciation allowance in the case of tangible property applies only to that part of the property which is subject to wear and tear, to decay or decline from natural causes, to exhaustion, and to obsolescence. The allowance does not apply to inventories or stock in trade, or to land apart from *123 the improvements or physical development added to it. It has long been recognized that expenditures intimately related to, and connected with, the acquisition of a capital asset are to be treated as part of the cost of or investment in the asset. Southern Natural Gas Company v. United States, 412 F. 2d 1222, 1230 (Ct. Cl., 1969), and cases cited therein. This principle has been applied in allowing depreciation for grading and graveling expenses to construct a private roadway so that patrons of petitioner's store could reach it conveniently, L. Z. Dickey Grocery Co., 1 B.T.A. 108 (1924), and for filling in and grading swampy land to be used as a lumber yard. Lord & Bushnell Co., 7 B.T.A. 86 (1927). Also, clearing and grading expenses have been held to be depreciable in the analagous situation of the development of a race track. [2]
*124 Depreciation has also been allowed for the costs of clearing and grading land acquired for use as rights-of-way by utility companies. Southern Natural Gas Company v. United States, supra; Commonwealth 873 Natural Gas Corp. v. United States, 395 F. 2d 493 (C.A. 4, 1968); Consumers Power Company v. United States, 299 F. Supp. 1180 (1969), affirmed and reversed on other issues, 427 F. 2d 78 (C.A. 6, 1970). And, in Norfolk Shipbuilding & Drydock Corp. v. United States 321 F. Supp. 222 (E.D. Va., 1971), it was held that dredging was an integral part of a pier facility, and therefore that the costs incurred were depreciable over the life of the pier. See also Rev. Rul. 65-265, 1965-2 C.B. 52, clarified by Rev. Rul. 68-193, 1968-1 C.B. 79, and Rev. Rul. 71-120, I.R.B. 1971-10, 7, wherein it is stated: "When an expenditure relates to an improvement or physical development added to the land, it may be subject to a depreciation allowance if the property meets all the requirements necessary for application of the depreciation deduction." The situation in the present case is not *125 unlike those involved in the above-cited cases. The improvements in question were an integral part of the construction of the mobile home park and not mere improvements of the land itself. The clearing, grading, and shaping of the land, including both the rough and the finish grading and shaping, were clearly necessary to the construction of the pads and patios as well as of the roads which made them accessible. Without this work petitioner could not have used the property for the operation of a mobile home park. The improvements were necessary so that petitioner's tenants would have level pads on which to place their mobile homes and adequate roads to reach them. The seeding, fertilizing and planting of "some" shrubbery were minor items. Petitioner's president testified that the cost of the fertilizer for the entire 131 lots was approximately $200. Although not shown, we doubt that the cost of the grass seed and "some" shrubbery was much in excess of that amount. Moreover, such "landscaping" not only made the park more attractive to potential tenants, but it may be assumed served the purpose of retaining the soil after it had been graded and shaped. It is also to be noted that respondent's *126 "Guidelines for Depreciation," Revenue Procedure 62-21, 1962-2 C.B. 418, indicate that the cost of land improvements, such as "landscaping, shrubbery and similar improvements," though not deductible as current business expenses, may be depreciated over a period of 20 years. See also, Alabama-Georgia Syrup Co., 36 T.C. 747, 771 (1961), reversed on other issues sub nom Whitfield v. Commissioner, 311 F. 2d 640 (C.A. 5, 1962). Considering all the facts and circumstances, it is our opinion that the improvements in question were not "inextricably associated" with the land alone but were directly related to and a necessary part of the construction of concededly depreciable assets, necessary to the operation of petitioner's mobile home park and therefore subject to depreciation. As testified to by petitioner's president, any other business use of the land would require the clearing up of the pads and patios and again reshaping of the land. See Rev. Rul. 68-193, supra. We hold that the costs of clearing, grading, terracing, and landscaping here involved were an integral part of the construction and development of petitioner's mobile home *127 park and are depreciable over the same period as the pads, patios and other improvements for which respondent has determined a fifteen-year useful life. Algernon Blair,inc., 29 T.C. 1205 (1958), relied upon by respondent, does not, in our opinion, require a different conclusion. Decision will be entered for the petitioner. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. In Thomas J. McGinty, a Memorandum Opinion of this Court, 3 T.C.M. 838↩ (1944), the petitioner incurred expenses in the development of a racetrack. In preparing the oval track as a racing strip, it was necessary, because of the swampy nature of the land, to build up a strip of land about 5/8ths of a mile long, 35 feet deep and 85 feet in width to achieve a level racing track. In addition, to provide parking space for patrons and to have firm roads to the various structures located upon the premises, an area of 10 acres was graded and covered with a slag and cinders. The Commissioner disallowed deductions for depreciation on these expenditures, claiming that these improvements were an inseparable part of the land. In rejecting the Commissioner's argument and holding these expenses to be depreciable, the Court noted that the improvements involved were not made to improve the fee; that they were required as a necessary part of the plant and that they were essential to the business of racing in which the partnership was engaged.