Appeal of the **NATIONAL CITY BANK OF SEATTLE.**    Docket No. 95.

A corporate taxpayer which during the year 1918 spent a large amount for the improvement of a building which it did not own upon the condition that it should be permitted to occupy it for a period of five years at a stipulated monthly rental is not entitled to deduct from the gross income shown in its annual tax return for 1918 the entire cost of the improvements.

Submitted October 31, 1924; decided December 11, 1924.

*Robert Ash, Esq.*, for the taxpayer.

*John D. Foley, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

From the evidence of record, the Board makes the following

### FINDINGS OF FACT.

In 1917 the National City Bank of Seattle was confronted with the necessity of finding suitable quarters in which to transact its banking business. After diligent search it was determined that the only suitable quarters in the city of Seattle were those located on the ground floor of the Marion Building. The Marion Building was owned by the J. M. Colman Co. That company refused to give a formal written lease to the premises but Mr. J. W. Maxwell, president of the National City Bank, and L. J. Colman, acting for the J. M. Colman Co., being thereunto duly authorized entered into a verbal agreement whereby the National City Bank was to occupy the ground floor of the Marion Building for a period of five years. Under the verbal agreement, the Colman Co. was to make certain improvements to the outside of the building and the National City Bank was to install certain permanent improvements on the inside of the building. The verbal agreement was confirmed in a letter written by L. J. Colman December 10, 1917, as follows:

Confirming our verbal understanding of the Marion Building lease, for your files. You are taking over the ground floor of the Marion Building, exclusive of the elevator entrance, to be occupied by your bank for a period of five (5) years, at the rate of one thousand ($1,000) dollars per month for the first two and one half (2½) years and eleven hundred ($1,100) dollars per month for the second half of the five-year period with privilege of an additional five (5) years at a rate to be agreed upon between ourselves later, and if we fail to come to an understanding, the matter is to be adjusted by outside parties, as we may choose.

The building to be overhauled and refinished in conformity to the sketches which we have already gone over together and which are now in the hands of Mr. A. L. Loveless, architect, for refinements and adjustments.

The rent includes heat and water but not light.

The main lobby floor to be covered with marble, and the corner space, for the manager's office, to be floored with oak or some other hardwood, suitable to you, balance of floor smooth cement finished for linoleum.

If your bank sustains any money loss caused by moving from your present location before the term of your present lease expires we are to divide said loss with you on a 50-50 basis.

Trusting that this covers the main points in the understanding, we are
·Sincerely yours,

J. W. Maxwell acknowledged Mr. Colman's letter as follows:

We have yours of the 10th inst. confirming our verbal understanding of the lease for the ground floor of the Marion Building.

Your outline of same appears to be in line with my understanding, except we desire the privilege of other tenants occupying space with us provided they are of a character that would maintain the standard of the bank and the building.

The National City Bank took possession of the ground floor of the Marion Building in 1918 and expended $33,413.99 in making certain permanent improvements to the premises during the year 1918. The National City Bank of Seattle has occupied the ground floor of the Marion Building since 1918 and is still in possession.

In its tax return for 1918, the taxpayer deducted from gross income the $33,413.99 in question. This deduction was disallowed by the Commissioner and in lieu thereof the taxpayer was permitted the deduction of one-fifth of this amount, which represented the depreciation upon the improvements allocable to the year 1918.

A deficiency letter was mailed to the taxpayer on July 8, 1924, showing a total deficiency in tax for the year 1918 of $30,688.84.

#### DECISION.

The taxpayer was not legally entitled to deduct from its gross income of 1918 the $33,413.99 spent for improvements on its leased property. The determination of the Commissioner is approved.

#### OPINION.

SMITH: The appeal of the taxpayer presents the question whether a corporation which is a lessee for a term of years may deduct from gross income shown in its tax return for 1918 the cost of certain improvements upon the leased premises made and paid for by it during the year or only such portion of the cost as is represented by the quotient obtained by dividing the total cost by the number of years remaining of the term of the lease. The taxpayer made the improvements in accordance with the terms of the lease contract and treated the cost thereof as an expense item of the year 1918. The Commissioner has disallowed the item as an expense payment and contends that it should have been capitalized, the amount spread over the term of the lease, and such portion thereof deducted from the gross income shown in the return for each year of the term of the lease as is properly to be allocated to such year.

Section 234(a) of the Revenue Act of 1918, under the provisions of which the taxpayer made its income tax return for 1918, provides that a corporate taxpayer is entitled to deduct from gross income among other items—

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity.

Section 235 of the same act provides:

That in computing net income no deduction shall in any case be allowed in respect of any of the items specified in section 215.

Section 215 provides in part:

That in computing net income no deduction shall in any case be allowed in respect of * * *

(b) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.

The taxpayer makes the contention that the agreement which it made with the J. M. Colman Co. for the occupancy of the ground floor of the Marion Building for a period of five years was not a valid lease for the term of five years but was valid for the term of only one year, since it was not acknowledged as is required by the statutes of Washington for leases of the term of more than one year. It is pointed out that Remington's 1915 Codes and Statutes of Washington provide in part as follows:

Section 8745. All conveyances of real estate or of any interest therein, and all contracts creating or evidencing any encumbrance on real estate shall be by deed.

Section 8746. All deeds and volutary transfers of real estate or interest therein shall be in writing, signed by the party bound thereby, and acknowledged by the party making it before some person authorized by the laws of this State to take acknowledgements of deeds: Provided, * * *

Section 8802. Tenancies from year to year are hereby abolished, except when the same are created by express written contract. Leases may be in writing or print, and shall be legal and valid for any term or period not exceeding one year, without acknowledgement, witnesses, or seals.

Although it is true that under the statutes of Washington a lease contract for more than one year must be acknowledged in order to be valid it does not follow that the courts of the State of Washington will not protect a lessee who has, under a defective lease, made extensive improvements upon leased premises with the consent of the lessor. In one such case it was said:

It does not necessarily follow from our conclusion as to lack of acknowledgment of the execution of the lease that the appellant is thereby deprived of his right to relief in the nature of specific performance or damages as prayed for upon the ground that the parties are now bound by the terms of the lease by reason of performance of acts referable thereto. This court has heretofore held that there may be such performance of acts referable to a lease contract, that its terms will be enforced as though it had been executed with all the formalities prescribed by statute, the same as rights under an informally executed deed will be protected under like circumstances. *McGlauflin* v. *Holman*, 1 Wash. St. 239, 24 Pac. 439; *Schulte* v. *Schering*, 2 Wash. St. 127, 26 Pac. 78; *Schulte* v. *Littlejohn*, 2 Wash. St. 129, 26 Pac. 79; *Northcraft* v. *Blumauer*, 53 Wash. 243, 101 Pac. 871; *Koschnitsky* v. *Hammond Lumber Co.*, 106, Pac. 900. These cases involved both unacknowledged and oral leases. All were for terms for more than one year and hence did not comply with the statute in their execution; yet their provisions were given full force and effect because of the performance of acts with reference to and in the belief that they were binding contracts between the parties. In each of these cases it is true that it was the lessee who had performed the acts and was relying thereon to enforce rights under the lease and retain or recover possession of the leased premises. * * * (*Forrester* v. *Reliable Transfer Co.*, 59 Wash., 86, 109 Pac. 312.)

The Board is of the opinion that the case at bar must be disposed of upon the basis that the taxpayer had an equitable and enforceable lease for a period of five years from 1918.

It is now necessary to consider whether the taxpayer is entitled to deduct from its gross income of 1918 the full amount of $33,-413.99, paid by it in 1918 for improvements upon premises to be occupied by it for a term of five years. The position of the taxpayer is that the amount represented a payment required to be made as a condition to the possession of the demised premises, that it was a payment comprehended by the phrase " other payments " contained in section 234(a)(1) of the taxing act and, as such, is deductible from gross income. The position of the Commissioner is that the amount was not such an expense payment as is comprehended by section 234(a)(1) of the taxing act, but that it was a capital expenditure upon which the taxpayer is entitled to claim a deduction for exhaustion for each of the tax years to the end of the term of the lease. The claimed deduction was disallowed by the Commissioner in accordance with Article 109 of Regulations 45 (1920 edition), which reads in part as follows:

The cost borne by a lessee in erecting buildings or making permanent improvements on ground of which he is lessee is held to be a capital investment and not deductible as a business expense. In order to return to such taxpayer his investment of capital an annual deduction may be made from gross income of an amount equal to the total cost of such improvements divided by the number of years remaining of the term of lease, and such deduction shall be in lieu of a deduction for depreciation. If the remainder of the term of lease is greater than the probable life of the buildings erected or of the improvements made, this deduction shall take the form of an allowance for depreciation.

It is important to consider whether a lessee may deduct from gross income in accordance with section 234(a)(1) of the taxing act every payment which it may be required to make under the covenants of the lease, or whether it is limited in making deductions under this paragraph to annual payments in the nature of expenses. There are clearly certain payments of this nature which it is privileged to deduct, such, for instance, as taxes paid upon the lessor's property; payments for repairs made to the property; interest paid upon the bonds and dividends paid upon the stock of the lessor corporation. Payments made by a lessee for improvements upon the lessor's premises are not an annual charge. They are not " ordinary and necessary expenses " of the lessee in the transaction of business for the year in which the payments are made, provided, of course, the term of the lease extends beyond the end of the taxable year. From the standpoint of the lessee they represent an investment of capital for improvements which will inure to the benefit of the lessee for the term of the lease, or for the term of the useful life of the improvements.

The Board is clearly of the opinion that it was the intention of Congress to impose the income tax upon the annual gains, profits, and income of a taxpayer for the taxable year; that it was never its intention that a lessee taxpayer should be privileged to invest the profits of the year in improvements upon the lessor's property, and thereby escape income tax for the year in which the improvements are made. It appears to the Board that section 215(b) of the taxing act above quoted is as applicable to a lessee corporation as to a lessor corporation. In either case the corporation making the improvement expects to get the benefit of the improvement for a series of years; in either case the property or estate of the taxpayer is in-

creased in value to the extent of the value to it of the improvement made. A lessor corporation making an improvement would clearly be entitled to deduct from gross income in its tax returns an amount representing depreciation upon the improvement made by it; so likewise would the lessee corporation making an improvement upon the lessor's property be entitled to deduct from gross income in its annual tax returns, an amount representing the exhaustion of its investment, for in opinion of the Board, the investment made by the lessee is "property used in the trade or business" for which the lessee is entitled to a reasonable allowance for exhaustion (section 234(a)(7) Revenue Act of 1918). It is a fact of no importance in this connection that the legal title to the improvements made vests immediately in the lessor. *Cryan* v. *Wardell*, 263 Fed. 248; *Miller* v. *Gearin*, 258 Fed. 225. The equitable title and the right to possession are in the lessee, so long as the covenants of the lease are kept.

The taxpayer bases its contention for the deduction from the gross income of 1918 of the $33,413.99 in question principally upon the decision of the Circuit Court of Appeals for the Third Circuit in the case of *The Central Railway Company of New Jersey* v. *Duffy*, 289 Fed. 354. The Board has carefully considered this decision, which is now before the Supreme Court of the United States for review upon writ of certiorari. That case arose under the Revenue Act of 1916, and was decided upon a stipulation of facts which was materially different, in the opinion of the Board, from the stipulation of facts presented here. The Board is therefore of the opinion that it is not controlling in this case.

For the reasons above stated the Board is of the opinion that the disallowance by the Commissioner of the claimed deduction of $33,-413.99 from the gross income of the taxpayer for 1918 and the allowance in lieu thereof of an amount representing such portion of the exhaustion of the taxpayer's investment in improvements as is properly allocable to the year 1918 was correct, and the determination of the Commissioner is accordingly approved.