SOUTHERN AMUSEMENT CO., INC., *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 13754, 13753. Promulgated November 16, 1928.

*George M. Morris, Esq.*, for the petitioner.
*J. L. Backstrom, Esq.*, for the respondent.

OPINION.

Morris: The first allegation herein pertains to special relief for the years 1919, 1920, and 1921 under the provisions of sections 327 and 328 of the Revenue Acts of 1918 and 1921. The rate of tax for 1919 having been agreed to by stipulation between the parties, thereby disposing of the first allegation of error in respect to that year and counsel for the petitioner having moved to postpone consideration of the remaining years included in that allegation until we have determined the questions raised by the other allegations of error, as provided for in Rule 62 of the rules of the Board, we shall address ourselves to the second and third allegations of error urged by the petitioner and the affirmative allegation of error urged by the respondent by amendment to his answer.

At the hearing respondent's counsel moved to amend his answer to allege error on his part in allowing amortization for 1920 on the Broadway Theater building prior to its completion in November of that year, and he further moved to increase the deficiency as found for that year by reason of any adjustment which may be occasioned by a final determination of this question. It was agreed between the parties, however, that the petitioner is entitled to amortization on the difference between the amount of any loss which we may find for 1920 and the total cost of the building and equipment as destroyed by fire and, furthermore, that if petitioner is entitled to no loss then it will be entitled to amortize the total cost over the remaining life of the lease. We shall determine first, therefore, whether the petitioner is entitled to any loss at all.

Section 234 of the Revenue Act of 1918, which controls the question in controversy, provides that in the computation of net income there should be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity.

\*     \*     \*     \*     \*     \*     \*

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise.

Section 235 of the same Act provides:

That in computing net income no deduction shall in any case be allowed in respect of any of the items specified in section 215.

Section 215, in so far as applicable here, provides:

That in computing net income no deduction shall in any case be allowed in respect of—

\*      \*      \*      \*      \*      \*      \*

(b) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.

The petitioner contends that where a lessee is compelled to restore a building burned, the cost of replacement of that building at the time of its destruction by fire constitutes a loss to the lessee which is deductible from its gross income for the year in which such destruction takes place and the replacement made. Assuming for the purpose of a preliminary examination of the question involved that an obligation on a lessee to restore improvements when destroyed by fire establishes the right of said lessee to a loss, we can not agree that the petitioner was obligated to rebuild at any time prior to February 14, 1920, when it voluntarily agreed with the owners in writing to do so. In the lease on the premises covering the period January 1, 1915, to January 1, 1925, the terms of which the petitioner assumed as sublessee of said premises, it was provided that it would deliver up the premises at the end of the term in as good order and condition, " fire and other unavoidable accidents and ordinary wear and tear excepted as at the time of the commencement of this lease." This language without more would seem to clearly establish the fact that the petitioner as sublessee was expressly released from any obligation to rebuild in the event of fire. The petitioner, however, relies strongly upon the further provision of the lease, set forth herein in our findings of fact, which provides that the lessors shall pay all taxes and legal assessments and " that they will keep the building on said lot insured for its fair value, and that in event of loss by fire they will apply the proceeds from the fire insurance policies towards the restoration of said building to its condition prior to the fire, \*  \*  \*." We do not regard this covenant as requiring the lessees to perform any act or acts whatsoever. As we construe the language used there, the lessors themselves are obligated to keep the premises insured in the event of loss by fire and apply the proceeds from the fire insurance policies toward restoring the building to its condition prior to any fire that may occur in order that the lessees' period of occupancy under the lease may not be terminated by fire destruction.

We are further convinced that the petitioner was not obligated under its lease to rebuild the destroyed building by the fact that it entered into an agreement on February 14, 1920, by which it agreed to rebuild. Why, if it was obligated under the original lease to replace the destroyed premises, should it have entered into a further agreement for the doing of something which it was already required to do under the former covenants in the lease? Petitioner introduced evidence to the effect that it was the understanding of the parties to the lease that the lessee would rebuild in case of fire and counsel argued that the new building was in course of construction when the contract of February 14, 1920, was entered into. If such were the fact it would lend considerable weight to the testimony as to the understanding of the parties and their interpretation of the instrument, but we are unable to make any such definite finding from the record. In fact in the contract of February 14, 1920, it is provided that " the amusement company agrees to let the contract to rebuild said theater at once."

In this connection it is perhaps noteworthy that section 5179 of the Code of Virginia, 1919, provides that a covenant that a lessee will leave the premises in good repair is, subject to the qualifications of section 5180, to the same effect as a covenant that the premises will, at the expiration of the term, " be peaceably surrendered and yielded up unto the lessor, his representatives, or assigns, in good and substantial repair and condition, reasonable wear and tear excepted." Section 5180 of the Virginia Code provides:

Reduction of rent, if buildings destroyed or lessee deprived of possession.— No covenant or promise by a lessee to pay the rent, or that he will keep or leave the premises in good repair, shall have the effect, if the buildings thereon be destroyed by fire or otherwise, in whole or in part, without fault or negligence on his part, or if he be deprived of the possession of the premises by the public enemy, of binding him to make such payment or repair or erect such buildings again, *unless there be other words showing it to be the intent of the parties that he should be so bound.* But in case of such destruction, there shall be a reasonable reduction of the rent, for such time as may elapse until there be again upon the premises buildings of as much value to the tenant for his purposes as what may have been so destroyed; and, in case of such deprivation of possession, a like reduction until possession of the premises be restored to him. (Code 1887, par. 2455.)  (Italics supplied.)

We are satisfied, therefore, from the facts which we have briefly discussed and from all the other surrounding circumstances that the petitioner was not, as it contends, obligated under its lease to rebuild the destroyed premises and we shall dismiss that factor from our further consideration of the question.

In *National City Bank of Seattle*, 1 B. T. A. 139, the petitioner through its agents entered into a verbal agreement to lease certain

premises for a period of five years, under which the lessor was required to make certain improvements to the outside of the building and the petitioner was required to install certain permanent improvements on the inside. The petitioner there took possession of the premises and expended $33,413.99 in making the required improvements during the year 1918, and in its tax return for that year it deducted that sum in the computation of its net income, which sum was disallowed by the respondent. The Board there sustained the respondent's disallowance of the deduction claimed and the allowance of an amount representing such portion of the exhaustion of the taxpayer's investment as was properly allocable to the year 1918.

Thus it will be seen from the foregoing opinion that notwithstanding the contractual obligation of the lessee to improve the premises as a condition to the enjoyment of its lease, that factor is not determinative of the question at issue.

Considering the *National City Bank of Seattle, supra; Texarkana Cotton Oil Co.*, 1 B. T. A. 1142; *Simmons & Hammond Manufacturing Co.*, 1 B. T. A. 803; *Gladding Dry Goods Co.*, 2 B. T. A. 336, and *Louis C. Levy*, 2 B. T. A. 361, we are of the opinion, that the deduction which the petitioner claims by reason of the reconstruction of the Broadway Theater building, which it occupied as lessee, is not allowable in the computation of net income for 1920.

Having concluded that there was no loss as contended for by the petitioner, within the year 1920, and it having been agreed between the parties that it is entitled to amortize the total cost over the remaining life of the lease, we have the further question of when the amortization period actually began. In *Texarkana Cotton Oil Co.*, *supra*, the Board, after determining that the expenditures made for improvements upon leased premises, were not deductible from gross income for the fiscal year in which they were made, held that the amount in controversy should be distributed over the period from the time the petitioner " definitely committed itself to the expenditures " to the date of termination of the lease.

The petitioner here definitely committed itself to rebuild the Broadway Theater on February 14, 1920, and we, therefore, hold that it is entitled to amortize the total cost of its expenditures, less the amounts recovered by way of salvage and insurance, over the remaining life of the lease beginning with February 14, 1920.

In recomputing the amount of the deficiency by reason of the foregoing conclusion the amounts of amortization already claimed by the petitioner and allowed by the respondent shall, of course, be considered as a part of said recomputation.

The foregoing disposes of the petitioner's second allegation of error and also the affirmative allegation of error urged by the respondent.

The last allegation of error urged by the petitioner is with respect to the deductibility of the loss occasioned by demolishing the improvements upon the so-called Williamson lot. The petitioner contends that when the said property was acquired in 1920 it had no intention whatsoever of demolishing the building thereon and that, therefore, under section 234 (a) (4) of the Revenue Act of 1921 and article 142 of Regulations 62, promulgated thereunder, it is entitled to deduct the loss claimed. Section 234 of that Act provides in part as follows:

That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*     \*

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise; \* \* \*

Article 142 of Regulations 62 reads as follows:

*Voluntary removal of buildings.*—Loss due to the voluntary removal or demolition of old buildings, the scrapping of old machinery, equipment, etc., incident to renewals and replacements will be deductible from gross income in a sum representing the difference between the cost of such property demolished or scrapped and the amount of depreciation sustained with respect to the property prior to its demolition or scrapping, and allowable as a deduction in computing net income. When a taxpayer buys real estate upon which is located a building which he proceeds to raze with a view to erecting thereon another building, it will be considered that the taxpayer has sustained no deductible loss by reason of the demolition of the old building, and no deductible expense on account of the cost of such removal, the value of the real estate, exclusive of old improvements, being presumably equal to the purchase price of the land and building plus the cost of removing the useless building.

In *The Winter Garden, Inc.*, 10 B. T. A. 71, the petitioner took possession of a restaurant on or about December 1, 1921, and after having operated it for three days, it closed its doors because of insufficient patronage, and within a few days thereafter began remodeling. The kitchen and dining room were practically made over and the guest capacity nearly doubled. The various changes made necessitated discarding most of the equipment, estimated by the petitioner to have a value of $15,000, which was a total loss. The cost of remaking and equipping the café was approximately $36,000. In that case we found as a fact that it was the intention of the petitioner to operate the restaurant as it then stood without extensive alterations. In preparing its income-tax return for the year 1921, the petitioner there deducted the $15,000 in computing its net taxable

income, which was disallowed by the respondent. The Board having found that it was not the intention of the petitioner to remodel the premises when purchased, and that the said remodeling was an afterthought following three days of experience in operation, held that the loss claimed by the petitioner was actually sustained and, therefore, deductible under section 234 (a) (4) of the Revenue Act of 1921.

The record shows that the petitioner here enjoyed a monopoly on motion pictures for white patrons in the City of Danville at the time when the Williamson property was acquired; that in 1920 there was a threatened invasion of its monopoly by certain interests then operating amusements in Richmond and Norfolk, Va.; that these interests were seeking property in the City of Danville for the purpose of erecting a motion picture theater to operate in competition with the petitioner's shows; that said interests attempted to purchase the Williamson property; that the Williamson property was at that time valuable and also growing more valuable as business conditions progressed in that city; and that it was the only available property in Danville suitable for the operation of a moving picture theater; that the petitioner, realizing the situation and fearing the conditions which competition might bring about, purchased the Williamson lot with improvements thereon on May 15, 1920, and paid therefor $60,000. The record satisfactorily discloses that the petitioner had no intention whatsoever when it purchased this property of demolishing the building and erecting improvements thereon. On the contrary, the testimony is conclusive that the principal reason for purchasing said property was that it would prevent encroachment upon its monopoly by outside interests and for the further purpose of renting or selling the property at a profit. The acquisition of the Williamson property, as the record shows, was an effective measure, and that the Norfolk and Richmond interests did not carry out their plans of operation in Danville. It was not until 1921 when other and more persistent competitive interests attempted to invade the motion picture field in the City of Danville that the petitioner was required to demolish the building, publish the erection of an up-to-date moving picture theater, and finally carry out its threat by beginning the erection of a building, ostensibly a theater, but in fact, stores and offices. We are satisfied that the petitioner is entitled to the loss sustained by reason of the demolition of the improvements on the Williamson property.

*Further proceedings for the years 1920 and 1921 may be had under Rule 62 (b) and (c).*