Aurora Village Shopping Center, Inc. v. Commissioner.
Aurora Village Shopping Center, Inc. v. Commissioner
Docket No. 5333-67.
United States Tax Court
T.C. Memo 1970-39; 1970 Tax Ct. Memo LEXIS 320; 29 T.C.M. (CCH) 126; T.C.M. (RIA) 70039; February 16, 1970, Filed George Constable, Seattle - First Nat'l Bank Bldg., Seattle, Wash; for the petitioner Lee A. Kamp, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined deficiencies in petitioner's Federal income taxes as follows: Year
Deficiency
1962
$ 44,635.75
1963
29,042.68
1964
32,801.02
1965
30,156.21
1966
23,047.00
Several issues were settled by the parties. The issues remaining to be decided are: (1) whether certain earth-moving expenses incurred in preparing a shopping center site *321 are attributable to the nondepreciable land or to the depreciable buildings erected thereon, and (2) whether petitioner is entitled to a loss deduction arising from the demolition of four residences acquired by purchase. If petitioner is entitled to a loss deduction, we must determine the correct amount of said loss. Findings of Fact Some of the facts were stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner is a corporation organized under the laws of the State of Washington. Its principal office was in Seattle, Washington, during the years in question and at the time of the filing of the petition. The Federal corporate income tax returns of petitioner for 1962 through 1966 were filed with the district director of internal revenue, Tacoma, Washington. During its taxable years 1959 through 1961 while petitioner was engaged in the construction of Aurora Village Shopping Center, petitioner incurred expenditures for earth moving and land improvements totaling $86,472.81. Petitioner allocated such expenditures as follows: Items charged to land account -
1959-1960
Howard S. Wright & Co. - Rock wall, etc
$7,842.13
5/5/59
Morford & Mowry - Survey
385.00
6/2/60
Holland Nurseries - Grading, soil preparation and plant- ing sh shrubbery
1,239.99
10/10/60
Fred Wall - Moving top soil
1,248.00
1961
John H. Sellen Construction Co. - Excavating and grad- ing, etc
13,289.62
3/13/61-12/8/61
Malmo Nurseries and others re shrubs, landscaping, etc
9,772.47
Re 1960
Share of $52,695.60 (see following schedule) 10,539.12
Total $44,316.33
Charged to buildings accounts - (see following schedule)
$42,156.48
Total $86,472.81
*322 127 *10 Summary of Work Performed and Charges by All-City Excavating Co. during the Period November 17, 1959 to July 7, 1960
11/17/59
I. Pittsburg Testing - Soil Testing
$50.00
II. Soil Testing:
A. (22) Field Density Tests 7/3/59 through 7/8/59 at $10 each
$220.00
B. (2) Graph Reports 7/1/59 through 7/4/59 at $50 each
100.00
C. Soil Compaction Labor (Field Density Reports), 8/6/59 through8/31/59, 8 i/4 days at $50 a day
412.50
D. Laboratory Moisture-Density Relationship (Proc- tor Test) 8/27/ 9
50.00
E. Soil Compaction Labor (Field Density Reports) 9/1/59 through 9/14/59, 3 i/2 days at $50 a day 175.00 957.50
12/10/59
III. Contract:
A. Clearing and Grabbing
$2,135.00
B. Stockpiling Top Soil - 1300 cu. yd. at $0.30 cu. yd.
390.00
C. Relocating Ditch - 1,750 lin. ft. at $0.25 lin. ft
437.50
Sales Tax 118.50 3,081.00
12/10/59
IV. Change Order #1 to above Contract:
A. Extra Excavating for Former Service Station Area
$1,100.00
Sales Tax 44.00 1,144.00
1/22/60
V. Common Excavating Work:
A. Excavating - 148,000 cubic yards - 90% x 148,000 cu. yds. times $0.27 cu. yds
$35,964.00
Sales Tax 1,438.56 37,402.56
7/07/60
VI. Contract:
A. Excavating - 14,800 cu. yds. at $0.27 cu. yd
$3.996.00
B. Relocating Ditch - 950 lin. ft. at $0.25 lin. ft
237.50
Sales Tax 169.34 4,402.84
7/07/60
VII. Change Order #2 to above Contract:
A. Extra Excavating and Grading for Spillane Prop- erty (Dispose o6 all buildings, breakup ma- sonry and concrete and dispose of it. Burn unsalvageable materials on site.)
$680.00
B. Excavating - 17,630 cubic yards at $0.27 cu. yd
4,760.10
Sales Tax 217.60
$5,657.70
Total
$52,695.60
Deduct
Portion to land account at 12/31/60 10,539.12
Balance $42,156.48
*323 ings was paid to All-City Excavating Company. The expenditures of $33,777.21 allocated to petitioner's land account were paid to others. The $42,156.48 allocated to its buildings accounts was further allocated by petitioner to the four buildings, and depreciation was computed thereon as follows: 1960
Big Bear Store
$10,840.54
1960
Pay N' Save Store
6,970.57
1960
Small Stores 3,267.13 $21,078.24
1961
Phase II Stores 21,078.24 $42,156.48
On April 27, 1959, petitioner had entered into a contract with John Graham and Company ("Graham") for architectural services for the design of the shopping center. Graham recommended that the level of the land be raised because the present level was below the street. Raising the level of the land would make the buildings to be constructed thereon more conspicuous to passing traffic. Graham further recommended leveling of the land to less than a three percent grade. Any steeper grade would cause discomfort to women walking in the parking lot. Pursuant to the recommendations of Graham, petitioner hired All-City to perform the above-described work. During 1961 and 1962, petitioner acquired residential property *324 located on the perimeter of the shopping center. Petitioner allocated the purchase prices between land and buildings as follows: 128 Seller and Address
Date
Land
Building
Myers - Parcel #12
8/28/61
$8,462.00
$11,538.00
(20019 Wallingford Ave. N.)
Young - Parcel #14
7/21/62
3,714.10
9,285.90
(1307 N. 200th)
Kropp - Parcel #15
8/ 1/62
2,105.15
9,261.74
(1147 N. 200th) (Exchanged for land at May 15, 1964 Hanson - 1301 N. 200th)
Thomas - Parcel #16
9/ 1/62
1,386.11
5,975.08
(1620 N. 200th)
Apportionment of the purchase price as between land and building, for each parcel, was made on the basis of percentages of assessed valuations. Depreciation on the buildings was computed on a straight-line five-year life. Parcels 12, 14, and 16 were rented during the years in question at the following monthly rates: Parcel 12 - $70; Parcel 14 - $60; Parcel 16 - $60 Petitioner exchanged parcel 15 (Kropp) in 1964 for unimproved land known as parcel 17. Petitioner had rented the house on parcel 15 prior to the exchange. The houses on the aforesaid parcels varied between 800 and 1,000 square feet and each house had one or two bedrooms. *325 Petitioner purchased the aforesaid parcels to protect the perimeter of the shopping center. When petitioner acquired the parcels it took into consideration that the rentals from the houses were sufficient to cover the installment payments on the purchase contract. The residences on parcels 12, 14, and 16 were still in existence and rented as of December 31, 1968. In the statement attached to his notice of deficiency, respondent attributed to land costs an additional $21,078.24, a portion of the amount paid by petitioner to All-City. Since petitioner had included this amount in the cost of its buildings, respondent's allocation reduced the amount of depreciation allowed to petitioner for taxable years 1962 through 1966. Respondent also reduced the amount of depreciation allowed on the rental dwellings on the premise that the bases of such improvements should be limited to the estimated gross rentals to be received for a period of five years. Opinion Two issues remain for our consideration. The first issue is whether certain earth-moving expenses which petitioner incurred in developing a shopping center should be attributable to the nondepreciable land or the depreciable buildings *326 erected thereon. On April 27, 1959, petitioner entered into a contract with Graham for architectural services. Graham's resulting recommendations were that in constructing the shopping center petitioner should raise the entire plateau of the site. Raising the site, Graham reasoned, would make the buildings more conspicuous to passing traffic. It was further recommended that the grading of the parking area be no greater than 3 percent. Any steeper grade might cause discomfort to female patrons. After receiving Graham's recommendations petitioner hired All-City to perform the necessary work. Section 1.167(a)-2, Income Tax Regs., [1] provides that the depreciation allowance applies only to that part of the property which is subject to wear and tear, to decay or decline from natural causes, to exhaustion, and to obsolescence. The allowance thus does not apply to land apart from the improvements or physical development added to it. With respect *327 to the foregoing regulation, respondent has issued a revenue ruling stating that grading costs "directly associated with the construction of buildings and the paved roadways, are not inextricably associated with the land itself." Under the facts presented in that ruling it was held that "the costs attributable to excavation, grading and removing soil necessary for the proper setting of the buildings and paving of the roadways are part of the cost of those assets and should be include 129 in the depreciable base for the buildings and roadways." Rev. Rul. 65-265, 1965-2 C.B. 52, clarified by Rev. Rul. 68-193, 1968-1 C.B. 79. The clarification in the latter ruling related only to the costs of grading for roadways. Petitioner has allocated to building costs $42,156.48 of a total $52,695 paid to All-City. Relying on Rev. Rul. 65-265, supra, petitioner contends that such expenditures were "directly associated with the construction of buildings" because they were incurred for raising the level of the building site and reducing the grade of the parking *328 area. On the other hand, respondent contends that only $21,078 of such expenditures were properly allocable to buildings. Thus, the sole task of the Court is to determine which party's allocation should be upheld. In resolving this dispute, we have considered closely the testimony of Manson Backus, an officer of petitioner, and the only witness to testify. He stated that one of the purposes of the earth moving was to clear and level the land located in the southeastern area of the shopping center site, for not all of the site had been cleared prior to Graham's architectural study. Later during the trial Manson Backus also testified that the earth moving was needed to move the high places into the low places. We believe that the earth-moving expenditures required for the purposes described in the preceding paragraph are properly attributable to land costs. The record, however, provides us no basis to make even an approximate estimate of such costs. Although Manson Backus stated that he relied upon his accountant's advice, the accountant did not testify. No reason has been given for his absence. The accountant's testimony would have provided the Court a means of evaluating the steps *329 leading to petitioner's ultimate allocation. Furthermore, a topographical survey was made after petitioner engaged Graham to do an architectural study. Neither Graham's report nor the survey were introduced into evidence. These items would have aided the Court in allocating the earth-moving expenses between building and land accounts. On the basis of this record we have no alternative but to uphold respondent's determination since petitioner has failed to satisfy its burden of proof. Therefore, of the $52,695 paid to All-City, approximately $31,617 is allocable to land costs. This total amount represents the sum of approximately $10,539 which petitioner itself allocated to land and the adjustment of $21,078 made by respondent. The other issue remaining for our decision is whether petitioner acquired four residential properties with the intent of demolishing them. Respondent has disallowed a substantial amount of the depreciation claimed on such residences. Relying on section 1.165-3(a)(2) of his regulations, respondent contends that the depreciable bases of the residences can not exceed the present value of petitioner's right to receive rentals from the buildings over the period *330 of their intended use. The foregoing provision of respondent's regulations applies only where a taxpayer acquires buildings with an intent to demolish formed at the time of purchase. We disagree with respondent's interpretation of petitioner's motivations for purchasing the residences. Instead, we believe the testimony of Manson Backus that the residences were acquired to protect the perimeter of the shopping center from encroachment by undesired business interests. We view as strong evidence on petitioner's behalf that the residences were still being rented in 1968, six years after their acquisition. The intentions of petitioner in the instant case are similar to those of the taxpayer in Southern Amusement Co., Inc., 14 B.T.A. 300 (1928). In that case taxpayer's motion picture theater enjoyed a local monopoly. Faced with the threat of a competitor purchasing a contiguous lot improved with a three-story apartment building, taxpayer acquired the neighboring lot. When the building was subsequently demolished, respondent disallowed the loss on the grounds that taxpayer had *331 intended from the time of purchase to demolish the building. We upheld taxpayer's loss deduction on the basis of convincing testimony that the principal reason for purchasing the building was to prevent encroachment on its monopoly. Since we do not think that petitioner's bases in the four residences should be limited by the formula prescribed in section 1.165-3 of respondent's regulations, we must consider whether the method in fact adopted by petitioner was proper. Petitioner determined the bases of the residences by allocating the purchase prices between land and improvements according to the ratios of assessed values. Respondent has not questioned the accuracy of 130 petitioner's figures. Accordingly, we uphold petitioner's method of determining the bases of such residences. 2554-58 Creston Corp., 40 T.C. 932, 940 (1963). To buttress his argument respondent cites WLS Investment Company, Inc., T.C. Memo. 1961-236. In that case the taxpayer purchased near its shopping center some lots having dwellings thereon. Petitioner eventually tore down the dwellings in order to expand the parking facilities of its shopping center. We held that petitioner failed to meet *332 its burden of proof that the properties were not purchased with an intent to demolish or remove the improvements. The case at bar is distinguishable for the basic reason that we think petitioner herein has met its burden. As mentioned above, petitioner presented cogent evidence that the lots in question were purchased to protect the perimeter of its shopping center from encroachment by unfavorable business interests. Decision will be entered under Rule 50. Footnotes
1. All references hereinafter to "section" are to the regulations promulgated under the Internal Revenue Code of 1954.↩