878

SIMONS BRICK CO., PETITIONER, v. COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 13973, 24509, 27247.   Promulgated December 21, 1928.

*Walter K. Mitchell, C. P. A.,* and *Ralph W. Smith, Esq.,* for the
petitioner.
*Shelby S. Faulkner, Esq.,* for the respondent.

882

OPINION.

MILLIKEN: The expenditure of $399 in each of the years 1920 and 1921 was made to the Better American Association for the purpose of promoting good will between capital and labor, securing advice and expert assistance relative thereto, and to allay and prevent strike and other labor disturbances. These were ordinary and necessary business expenses and should be allowed as deductions. Cf. *Richmond Hosiery Mills*, 6 B. T. A. 1247; *Geo. M. Cohan*, 11 B. T. A. 743. The contributions of $250 in each of the years 1921 and 1923 to the All Year Club of California bore a direct relation to the business of petitioner for the years in which made, with its consequent direct benefit, and are allowable as deductions. Cf. *Anniston City Land Co.*, 2 B. T. A. 526; *Ranier Grand Co.*, 11 B. T. A. 520. We think the benefits sought to be derived from the contribution of $400 to the Greater Harbor Committee are indirect and remote and accordingly the respondent did not err in disallowing the deduction claimed. Cf. *J. A. Majors Co.*, 5 B. T. A. 260, and *Joseph M. Price*, 12 B. T. A. 1186.

The claim for a deduction on account of contributions in 1921 and 1923 to the Lions' Club was waived by the petitioner at the hearing. Accordingly, the action of the Commissioner in disallowing these amounts as deductions is approved.

In 1920 petitioner expended $1,395.92 for alterations and improvements for its offices, which were in leased premises. Petitioner contends that it leased the office from month to month and that the expenditure is deductible for the year in which made. The Commissioner treated the amount as a capital expenditure and allowed a depreciation deduction of 10 per cent per year. There was no written lease and the only evidence as to the character of the lease is that it was a month to month lease, but petitioner has occupied the premises since the alterations were made in 1920 to the present. No definite term was agreed upon. In the cases of *Wm. Scholes & Sons*, 3 B. T. A. 598, and *Thatcher Medicine Co.*, 3 B. T. A. 154, we held that the cost of improvements erected by a tenant at will are not deductible in the year when made, but should be depreciated over the useful life of the improvements. The action of the Commissioner is therefore approved.

The expenditures of $2,177.90 for "molds" and $217.60 for signs in 1920, and the expenditure of $1,224.07 in 1921 for repairing automobiles were conceded by the Commissioner as allowable deductions in the years when expended. During the year 1923, petitioner expended $467.28 for boiler tubes which were used in repairing boilers. This amount represented an ordinary and necessary expense to the petitioner and constitutes an allowable deduction from income for the year 1923.

During September and October of 1923, W. R. Simons president of petitioner made a trip to New York for the purpose of making a general survey of the industries carrying on a business similar to that of petitioner and secure such new ideas as were possible concerning the progress being made in the industry. He was accompanied by his wife, and one-half of all of the expenses of the trip were charged to her account. We are of the opinion that one-half of such expenses or $758.18 constituted an ordinary and necessary expense and an allowable deduction for the year 1923.

During the year 1920 the Commissioner allowed as depreciation on "racks" 25 per cent of $1,672.75. In the respondent's answer to the petition he admits error on this point and concedes that the depreciation for the year 1920 on this item should have been 50 per cent.

During the year 1920 petitioner purchased "pallets" at a cost of $4,521.16. The respondent allowed depreciation based upon a useful life of four years. The "pallets" had a useful life of one year and the cost of the same should be allowed as a deduction for the year 1920.

The issue relating to a deduction of $300 for a bad debt in 1920 was waived by the petitioner at the hearing. Accordingly, the action of the Commissioner is approved.

The petitioner alleges that the Commissioner used as a basis for computing depreciation the cost of the petitioner's assets less the depreciation allowed in previous years, that is, by the diminishing-balance method, instead of computing depreciation on the basis of the cost of the assets. It appears from the record that the petitioner had carried in its books the depreciated balance of the cost of its assets. It was, therefore, necessary for the petitioner to establish the total cost of its assets unreduced by depreciation. For this purpose it introduced a summary showing the cost of the several classes of assets at the end of each of the years 1919 to 1923, inclusive, which summary was made up by an accountant and taken from the books of the petitioner. There were also introduced certain rates of depreciation for the various classes of assets, and a stipulation was entered into which provided, "That the annual depreciation rates shown on petitioner's Exhibit (2) will apply during the entire period that depreciation affects invested capital." The petitioner's "Exhibit (2)" mentioned above contained the rates of depreciation previously referred to. The stipulation is not clear but it appears to deal specifically with invested capital, no mention being made of the deductions for depreciation in the years under review. It does not aid us in arriving at the annual deductions, for the reason that we are not provided with a statement showing the cost of assets actually in existence during the years under review. The corporation was organized in 1898; consequently, all the assets then existing on which a depreciation rate of more than 5 per cent is applicable would be entirely depreciated by the taxable years, and should have been eliminated from the cumulative cost accounts since they would be at least theoretically out of existence. Some of the assets have lives of three years and some of four. Therefore, assets of this character could only be included in the capital account if purchased within three or four years of the year at issue. We are not satisfied that the cumulative costs submitted by the petitioner represent the cost of assets actually in existence; and the testimony does not indicate that any adjustments have been made on account of assets totally depreciated. Consequently, we are not provided with a basis to which depreciation rates could be applied, even assuming that the stipulation, as to depreciation rates, referred to rates to be used in computing the annual deductions for depreciation.

While the method employed by the Commissioner in arriving at the depreciation deductions might not be an acceptable method of computing depreciation, and might be open to serious objection, we do not have sufficient facts of record upon which we might predicate a change in the allowances made by him. The determination of the Commissioner must, therefore, be approved.

The petitioner contends that the March 1, 1913, value of its clay deposits was greatly in excess of the value determined by the Commissioner and asks for a depletion rate of from 14 cents to 17 cents a ton.

The petitioner introduced no direct testimony as to the value of its clay lands but has endeavored to prove the value by reliance upon certain elements such as the sale of raw clay as compared with the cost thereof, the tonnage of clay in each property, the book value of the petitioner's plant and equipment at March 1, 1913, and the estimated cost of renewals and additions to the plant over the life of the deposits. Petitioner merely presents various figures, and in its brief has made some ingenious computations by which it arrives at a unit value per ton greatly in excess of that determined by the Commissioner.

The respondent, on the other hand, introduces a witness who was president of the company at March 1, 1913, and who had made the purchases of clay lands, the value of which is at issue. The testimony of this witness who qualified as an expert clearly indicated that the value of $725 an acre which the Commissioner used in arriving at the unit value per ton was liberal as to each and every property involved. This cost per acre was the amount paid for the land purchased October 11, 1912, only a few months prior to March 1, 1913. The petitioner has claimed that this purchase price was less than the actual value of the clay deposit at the time on account of the restriction preventing the petitioner from extracting clay for a period of five years. This contention was not substantiated by the petitioner's witnesses. Petitioner introduced as witnesses, John B. Simons and Walter B. Simons, both connected with the taxpayer, and Frank H. Brooks, a real estate expert. The latter admitted he knew nothing about the value of clay lands and neither of the other witnesses gave positive testimony concerning the March 1, 1913, value of the lands. Their testimony was largely confined to prices paid for clay per ton at various times between 1905 to 1915, and was of little probative weight. The March 1, 1913, value allowed by respondent is two and one-half times the cost of similar property purchased in 1906, while that claimed by petitioner based on a basis of 14 cents per ton is three and one-half times over the cost of similar property purchased a few months prior to March 1, 1913, and one and one-half times cost of similar property purchased in 1922 and 1923. As between theoretical computations and the positive testimony of a person fully conversant with the value of the property at March 1, 1913, we accept the latter. Accordingly, the value of the clay deposits at March 1, 1913, and the depletion rate determined by the Commissioner is approved.

The petitioner claims that invested capital should not be reduced by depreciation and depletion sustained prior to March 1, 1913, and cites in support thereof the decision in the case of *Ludey* v. *United States*, 274 U. S. 295. Section 326 of the Revenue Act of 1918 and corresponding sections of the 1921 Act provide that invested capital shall include (1) actual cash bona fide paid in for stock or shares, (2) actual cash value of tangible property other than cash bona fide paid in for stock or shares at the time of such payment, (3) paid-in or earned surplus and undivided profits, not including surplus and undivided profits earned during the year. The amount of the earned surplus is a fact which must be determined under facts obtaining in each case. The court, in the *Ludey* case, referred to depreciation as being similar to the sale of a portion of property each year, just as in the case of minerals a part of the mineral is extracted and sold each year. Consequently, the original capital invested in the asset is reduced by the amount of such loss or the amount of such sale and must be restored out of the earnings before earned surplus can be determined. Depreciation of property and depletion of a natural deposit are facts, not theories, and the loss occasioned by such depreciation or depletion must be taken care of out of earnings in order to maintain the original capital invested. On the record before us, we therefore approve the action of the Commissioner in reducing invested capital on account of depletion and depreciation sustained prior to March 1, 1913. Compare our recent decision in *Carbo Petroleum Co.*, 12 B. T. A. 166, and the extended discussion of *Ludey* v. *United States*, *supra*, and see *Alexandria Paper Co.*, 3 B. T. A. 239; *City National Bank*, 2 B. T. A. 623; *New Ottawa County Telephone Co.*, 3 B. T. A. 753; *Milwaukee Brass Manufacturing Co.*, 10 B. T. A. 936; and *Entress Brick Co.*, 9 B. T. A. 588.

Inasmuch as we have approved the action of the Commissioner in computing depreciation and depletion, we must also approve his determination of invested capital except in so far as this decision may result in adjustments to invested capital during the years involved.

During the years 1922 and 1923, the Commissioner computed depletion on the clay deposits at the Montebello plant at a rate of 12.9 cents a ton, whereas, the petitioner claims it should be entitled to 14.9 cents. No evidence was introduced by the petitioner in support of this contention. Accordingly, the action of the Commissioner is approved.

The Beach Cottage which the petitioner erected was used for advertising and display purposes, and was available for such purposes at all times. The fact that it was infrequently used by officers or stockholders of the petitioner or friends for personal use does not affect the right of the petitioner to deduct depreciation and other expenses

connected with the cottage. It is inconceivable to us how a corporation could occupy a cottage or have a cottage occupied for personal uses. The money spent in cleaning and renovating the cottage and in acquiring supplies for the cottage are expenses necessary to aid in advertising and are business expenses connected with assets used in the petitioner's business. We are, therefore, of the opinion that the petitioner is entitled to deduct in 1922 the entire amount of depreciation suffered on the Beach Cottage amounting to $659.48; the entire depreciation suffered on furniture and fixtures amounting to $192.53; and the entire amount of $661.60 for cleaning and renovating the cottage; and the entire amount of $408.29 spent for supplies; and for the year 1923, the petitioner is entitled to deduct the entire depreciation suffered on the cottage amounting to $663.71, and the depreciation suffered on the furniture and fixtures of the cottage amounting to $219.22.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*