Robert Ehrlich v. Commissioner.
Ehrlich v. Commissioner
Docket No. 28288.
United States Tax Court
1951 Tax Ct. Memo LEXIS 122; 10 T.C.M. (CCH) 744; T.C.M. (RIA) 51248; August 28, 1951
*122 In October, 1946, petitioner entered into a written lease by which The New York Central Railroad Company leased to him certain real property in West Springfield, Massachusetts. The property included a parcel of land on which was a building and platform. He entered into possession on December 1, 1946, in accordance with the terms of the lease. Prior to that date the building had been unoccupied. It was in very bad condition and was not usable for any purpose. Petitioner arranged to have the building put in condition for use as a warehouse. To that end petitioner expended $7,366.34 during the calendar year 1947. The amount so expended included a payment of $1,500 to Nathan S. Scully and a payment of $1,670 to Harry R. Ehrlich as compensation for services rendered by them in connection therewith. As of April 1, 1948, the "original" lease to petitioner was terminated and on April 8, 1948, a new lease was given to a corporation entirely controlled by petitioner. Held: The expenditures made by petitioner in 1947 to renovate the building he held as lessee, including his payments to Nathan S. Scully and Harry R. Ehrlich, constitute a capital investment to be recovered through a deduction *123 for depreciation based upon the useful physical life of the improvements. Harry M. Ehrlich, Esq., for the petitioner. Joseph Landis, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion This is a proceeding for the redetermination of a deficiency in income tax of $5,302.31 for the calendar year 1947. The issues presented are whether certain expenditures made by petitioner in 1947 for materials and for labor, including supervision on a building which he held as lessee, were for repairs or permanent improvements; and, if such expenditures were for permanent improvements, whether the respondent correctly determined that for the calendar year 1947 petitioner might, under the facts presented, deduct *124 only an allowance for depreciation calculated over the useful life of the improvements, not the entire cost thereof. Findings of Fact The facts that were stipulated are so found and made a part hereof. Petitioner is an individual residing in Springfield, Massachusetts. He filed his income tax return for the calendar year 1947 with the collector of internal revenue for the district of Massachusetts. By written lease entered into on October 21, 1946, The New York Central Railroad Company, lessee of the Boston & Albany Railroad Company, leased to the petitioner certain real property in West Springfield, Massachusetts. The lease provided, in part, as follows: "This lease shall take effect and the term hereby demised shall begin on the first day of December 1946, and shall continued for the term of one (1) year beginning with said date, and after the expiration of said term until terminated on any day by a written notice of thirty (30) days given by either of the parties hereto to the other of an intention to terminate it. Such notice may be given by the lessor to the lessee either by delivering it to the lessee or by leaving it at his residence or place of business or by posting *125 it in a conspicuous place upon the demised premises. "The lessee shall pay for the said premises rent at the rate of FORTY-FIVE HUNDRED ($4500.00) DOLLARS a year, payable in monthly payments of $375.00 each, in advance, on the first day of each month in each year, and at the same rate for any part of a month unexpired at the termination of this lease, and for such further time as the lessee may hold said premises, and shall also pay all water rates, sewer and lighting charges, and street watering assessments: and in the event of the termination hereof during any month by written notice, as above provided, the lessor shall repay to the lessee a portion of the rent already paid by him for that month proportionate to that part of said month which shall then be unexpired. * * *
"Any structures which have been or may be erected by the lessee upon the demised premises are to be and remain the property of the lessee until the termination of this lease, and may be removed by him at any time before said termination, but if not so removed, such structures on such termination shall become the property of the lessor; * * *
"The lessee, if requested by the lessor, will remove from *126 the demised premises at the sole cost and expense of the lessee, before the termination of this lease, all rubbish and all structures and foundations erected or owned by the lessee and restore the said premises to their former condition, and if the lessee shall fail to do so on such request the lessor may remove the same at the expense of the lessee. * * *
"This lease and the conditions, covenants and agreements herein contained shall bind and be for the benefit of the heirs, executors, administrators, and assigns of the parties hereto, respectively, and the word 'lessor' shall be considered as meaning the lessor and its successors and assigns, and the word 'lessee' as meaning the lessee and his heirs, executors, administrators, and assigns." * * *
The property leased included a parcel of land with a building and platform thereon. The building was unoccupied at the time the lease was entered into and was in very bad condition. It had practically no roof, very poor flooring, and very poor platforms. In accordance with the terms of the lease petitioner entered into possession of the premises on December 1, 1946. During 1947 he made the following expenditures on the *127 building in order to make is rentable and suitable for use as a warehouse: To: A. F. McGrath - for electrical
work
$1,814.78
George Bridges - for calcimining
interior of building
500.00
A. L. Freedman - for work on
roof
852.00
Ray Hebert - for carpentry
325.52
Franklin Hardware Co. - for small
hardware
14.08
Carlisle Hardware Co. - for small
hardware
$ 17.88
Pittsburgh Plate Glass Co. - for
windows
49.03
Keystone Plumbing Co.
3.57
Steamfitters
101.90
Miscellaneous labor and materials
517.58
Nathan S. Scully
1,500.00
Harry R. Ehrlich
1,670.00
Total
$7,366.34
The building was not usable as a warehouse or for any other purpose before petitioner made the foregoing expenditures on it. The payment of $1,500 to Nathan S. Scully (hereinafter called "Nathan") included in the foregoing total of $7,366.34, was for his services as accountant and consultant in connection with the expenditures. Harry R. Ehrlich (hereinafter called "Harry") negotiated a lease on behalf of petitioner, and the above listed payment of $1,670 to him was for his services in obtaining the lease and for his supervision in connection with the expenditures on the building. *128 In his determination of the deficiency herein respondent disallowed these expenditures as expense deductions, and capitalized the total amount of $7,366.34. He allowed depreciation thereon at the rate of 5 per cent per annum for one-half of the year 1947 in the amount of $184.16. With the exception of these adjustments petitioner has conceded the correctness of respondent's determination. From December 1, 1946 until April 1, 1948, petitioner held the leased premises in his individual capacity. During the calendar year 1947, petitioner, d/b/a West Springfield Warehouse Company, sublet portions of the leased premises, and all of the rental derived therefrom was received by petitioner. During 1947 there were no negotiations in connection with obtaining a lease for West Springfield Warehouse & Distributing Corporation covering the property which petitioner held under lease. On April 8, 1948, The New York Central Railroad Company, lessee of the Boston & Albany Railroad, leased to a corporation known as West Springfield Warehouse & Distributing Corporation the premises which were the subject of the lease between petitioner and The New York Central Railroad Company, lessee of the Boston *129 & Albany Railroad. At that time petitioner had the dominant interest in the West Springfield Warehouse & Distributing Corporation. The lease to the corporation was for a term of 15 years beginning April 1, 1948 and thereafter until terminated by either party by 30 days' written notice. The lease provided, inter alia: "It is agreed that an indenture of lease made October 21, 1946, by and between the within lessor [The New York Central Railroad Company, lessee of the Boston & Albany Railroad] and Robert Ehrlich, which was assigned to the within lessee on November 1, 1947, and covering the premises herein demised, is hereby surrendered and cancelled as of April 1, 1948, this lease being in substitution therefor, but no obligation or liability which has arisen or may arise out of any act or omission of either party heretofore is in any way affected by such surrender or cancellation." This lease was not the same in terms as the one formerly held by petitioner. It had added thereto a number of provisions increasing the responsibilities of the lessee. It also contained the following guarantee by the petitioner: "In consideration of the execution of the foregoing lease which has *130 been given this day at my request by the The New York Central Railroad Company, I, Robert Ehrlich of Springfield, County of Hampden and said Commonwealth, hereby guarantee to it and its assigns the punctual performance by the said West Springfield Warehouse & Distributing Corporation of all the provisions of the said lease as the same now exist or may be from time to time hereafter altered by agreement between the lessor and the lessee." Opinion VAN FOSSAN, Judge: The first question at issue is whether the expenditures made by petitioner in 1947 to rehabilitate the premises which he possessed as lessee should be treated as an expense deductible to the extent thereof in that year or whether such expenditures were in the nature of a capital investment to be recovered in subsequent years through the medium of deductions for depreciation. In October, 1946, petitioner entered into a written lease by which The New York Central Railroad Company leased to him certain real property in West Springfield, Massachusetts. The property included a parcel of land on which was a building and platform. He entered into possession on December 1, 1946, in accordance with the terms of the lease. Prior *131 to that date the building had been unoccupied. It was in very bad condition and was not usable for any purpose. Petitioner arranged to have the building put in condition for use as a warehouse. To that end petitioner expended $7,366.34 during the calendar year 1947. The amount so expended included a payment of $1,500 to Nathan and a payment of $1,670 to Harry. As of April 1, 1948, the "original" lease to petitioner was terminated and on April 8, 1948, a new lease was given to a corporation entirely controlled by petitioner. Since the expenditures in question were made to put in condition as a warehouse a building not otherwise usable for any purpose, respondent takes the position that such expenditures were for permanent improvements or betterments and, therefore, are not deductible as expense. The applicable section of the Code is section 24 (a) (2). [1]
*132 We feel that respondent's position is well taken. The renovation of the building located on the leased premises was undertaken to make it rentable as a warehouse. Much of the work done was clearly in the nature of permanent betterments and as such would not be deductible by petitioner as an expense of carrying on his business. Duffy v. Central Railroad Company of New Jersey, 268 U.S. 55. "* * * While these betterments may not have materially prolonged the life of the building, they unquestionably rendered it better suited to the petitioner's purpose. * * *." Alexander Sprunt & Son, Inc., 24 B.T.A. 599, 619. For prior to the time they were made the building was unusable for any purpose. True, some part of the expenditures may have been made for work that would ordinarily be characterized as repairs when taken separately. However, such a separation may not be made here. Each item of expense was an integral part of the over-all and permanent betterment of the building and must be considered a part of the entire capital investment therein. "* * * To fix a door or *133 patch plaster might very well be treated as an expense when it is an incidental minor item arising in the use of the property in carrying on business, and yet, as here, be properly capitalized when involved in a greater plan of rehabilitation, enlargement and improvement of the entire property." I. M. Cowell, 18 B.T.A. 997, 1002. Likewise, the amounts paid to Nathan and to Harry were capital expenditures inasmuch as they were incidental to the over-all renovation of the building and in connection with the acquisition of a capital asset. Acer Realty Company, 45 B.T.A. 333, affirmed, 132 Fed. (2d) 512 (C.A. 8, 1942). Accordingly, respondent is sustained as to this issue. We turn now to the issue involving the correctness of respondent's determination that for the calendar year 1947 petitioner is entitled to deduct only an allowance for depreciation calculated over the useful physical life of the improvements and not the entire cost thereof. Petitioner argues that the lease under which he held the property terminated on November 30, 1947; that thereafter he was a tenant at will, his tenancy being terminable upon 30 days' written notice; that *134 since the improvements made by him on the leased premises could not be removed at the expiration of the lease, he is entitled to depreciate (or amortize) the cost thereof over the life of the lease; and that, therefore, he is entitled to deduct in his 1947 return the full amount expended in that year. We do not entirely agree. The amount petitioner may rightfully deduct for depreciation for 1947 must be calculated at the end of the year in the light of the conditions known to exist at that time. Commissioner v. Mutual Fertilizer Co., 159 F. (2d) 470; Leonard Refineries, Inc., 11 T.C. 1000. Here petitioner was a tenant under a lease which ran for a term of one year, beginning December 1, 1946, and thereafter until terminated by either party upon 30 days' written notice. There is no evidence that such notice was given by petitioner or his lessee at any time during 1947 or that there was any intention on the part of either party [*] to do. Further, there was nothing to indicate that the tenancy would not continue indefinitely under the same conditions. It matters *135 not what technical denomination might be given to his tenancy. On December 31, 1947, petitioner was in possession of the demised premises as a lessee for an indefinite period. And it has long been held that where a lessee's tenancy is for an indefinite period the proper method for recovery of the cost of any improvements made by him on the leased premises is by way of a deduction for the depreciation of such improvements based upon their useful life. Sentinel Publishing Company, 2 B.T.A. 1211; Thatcher Medicine Company, 3 B.T.A. 154; William Greilich & Sons, Inc., 3 B.T.A. 1333; Simons Brick Company, 14 B.T.A. 878, affirmed, 45 Fed. (2d) 57, (C.A. 9, 1930), certiorari denied, 283 U.S. 834; Standard Tube Company, 6 T.C. 950. In Sentinel Publishing Company, supra, at page 1217, the Board stated: "* * * The right to exhaust the cost of capital additions over a period shorter than their physical life depends upon proof that the usefulness of property to taxpayer as an income-producing factor will terminate prior to the end of the physical life of such property. Where the *136 weight of evidence shows, as in this case, that the occupancy of the premises by the taxpayer was for an indefinite period, the allowance for exhaustion, wear, and tear must be based upon the physical life of the property." We think that the rule expressed in that case is applicable here and should not be varied simply because there were provisions by which petitioner's tenancy could have been terminated had he or his lessor so desired. It is enough to say that no such contingency arose in 1947. And the proper time to consider the appropriate deduction on account of a termination of the lease is when such contingency actually arises. Frederick Fox & Company, 19 B.T.A. 232. As to what rights petitioner might have as a consequence of the transaction on April 8, 1948, we are not called upon to say. Whatever the effect might have been, such is not before us now and does not affect the case at bar. Sentinel Publishing Company, supra; Frederick Fox & Company, supra. There is no evidence as to when the renovation was actually completed, nor as to the physical life of the improvements. Therefore, we are unable to determine that the amounts *137 allowed as a deduction for depreciation is incorrect. Accordingly, we hold that the respondent did not err in his determination. Decision will be entered for the respondent. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. (a) General Rule. - In computing net income no deduction shall in any case be allowed in respect of - * * *
(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate; * * *↩